[No. B110752. Second Dist., Div. Seven. Sept. 1, 1998.]

STEPHEN KELLEY, Plaintiff and Appellant, v.
LEON MARTIN TRUNK et al., Defendants and Respondents.

520

**COUNSEL**

Richard T. Lobl and Kathy B. Seuthe for Plaintiff and Appellant.

Reback, Hulbert, McAndrews & Kjar, Gregory M. Hulbert and Elliot S. Blut for Defendants and Respondents.

## OPINION

### NEAL, J.—

#### SUMMARY

In a medical negligence action a defendant doctor is not entitled to obtain summary judgment based on a conclusory expert declaration which states the opinion that no malpractice has occurred, but does not explain the basis for the opinion.

#### FACTS AND PROCEEDINGS BELOW

At midnight on Thursday, November 24, 1994, appellant Kelley lacerated his forearm on broken glass. He bled profusely. He went to the emergency room, where the laceration was stitched. He was discharged at 2 a.m. and given Tylenol and codeine for pain.

The following day, Ward, a friend of Kelley's, spoke with respondent Dr. Trunk. Trunk was taking calls for Kelley's primary care physician, Dr. Berkowitz, who was temporarily unavailable. Ward told Trunk that Kelley had run out of pain medication and was "in a lot of pain." Trunk suggested that Kelley see Berkowitz when he returned on November 28 or 29. When Ward persisted, Trunk phoned in a prescription for the same medication Kelley had received the night before. Trunk did not inquire about Kelley's symptoms and did not suggest that he return to the emergency room or immediately see a physician.

Later that day or the next, Kelley himself called Trunk, and advised that even with the pain medication he was "still in a lot of pain." Trunk did not ask Kelley about any other symptoms or request that he be examined. Trunk advised Kelley to visit Berkowitz on November 28. Kelley did so.

On December 1, 1994, Kelley saw Berkowitz again. Berkowitz referred Kelley to an orthopedic specialist who performed surgery for "Compartment Syndrome" the next day.

Kelley thereafter sued Trunk and Berkowitz alleging he had lost use of his arm, and had suffered neurological damage, scarring, skin grafts, and pain as a result of negligent medical care.

Trunk moved for summary judgment. In support of his motion he submitted the declaration of Dr. Herndon. Herndon's page-and-a-half-long declaration recited Herndon's credentials, which were substantial, listed the medical records Herndon had reviewed, and then devoted the following three paragraphs to the merits of Kelley's case:

"4.   Plaintiff suffered a laceration to his left forearm and was treated at UCLA Medical Center on November 25, 1994. Plaintiff testified . . . that his friend Ward contacted . . . Trunk later that day because he had not been given a prescription for the analgesic medication that had been provided while in the UCLA Emergency Department. . . . Trunk, who was covering [calls] for Dr. Berkowitz, provided a prescription for Tylenol with codeine (the same medication the patient had previously been given by Dr. Char at UCLA) and advised that [plaintiff] should be sure to follow up with his primary care physician, Dr. Berkowitz, as instructed by Dr. Char prior to . . . leaving the . . . Emergency Room. Plaintiff . . . placed a call to . . . Trunk later that same day and, upon reporting his status, was again advised of the need to follow up with Dr. Berkowitz. [Plaintiff] never had any further contact with Dr. Trunk.

"5.   Plaintiff . . . was seen by Dr. Berkowitz November 28 . . . at which time his clinical presentation was not alarming. He was seen again by Dr. Berkowitz . . . on December 1, 1994, at which time his clinical picture had deteriorated resulting in an immediate referral to an orthopedic specialist the same day. Plaintiff underwent surgery performed by Dr. Thomas on December 2, 1994.

"6.   At all times . . . Trunk acted appropriately and within the standard of care under the circumstances presented."

Herndon did not further elaborate upon or explain the basis for his opinion exonerating Dr. Trunk.

In opposition to summary judgment Kelley presented the declaration of Dr. Karns, whose expert credentials arguably were as substantial as Herndon's. In Karns's opinion there *was* malpractice. Karns declared that Kelley's severe pain, despite medication, was suggestive of a cause other than the healing of the laceration; that Trunk, accordingly, should have arranged to examine Kelley, or have him return to the emergency room; and that had Trunk done so, the "severe pathology" Kelley ultimately suffered could have been diminished or avoided by earlier intervention.

Despite Herndon's reference to Kelley's "deterioration" and Karns's reference to "severe pathology," neither side presented evidence concerning the

nature of the disease or condition which led to Kelley's injury, the symptoms or indications which usually precede it, or when and how they usually appear. The only information on this point in the record are references in a brief and by Kelley's counsel during oral argument to "Compartment Syndrome." Counsel explained that pressure in the body's "compartments" causes a decreased blood supply to nerves and muscles and extremely intense pain. Irreversible damage begins to occur if this pressure is not relieved within approximately six hours. The Dictionary of Medicine explains that "Compartment Syndrome" occurs when certain structures, such as blood vessels, nerves, etc., are compressed within a confined anatomical space. (2 Schmidt, Attorney's Dictionary of Medicine (1998) p. C-303.)

The trial court granted the motion for summary judgment.

This appeal followed.

## DISCUSSION

The following legal rules provide the framework for decision.

Summary judgment motions must be based on admissible evidence, Code of Civil Procedure section 437c, subdivision (d), and must demonstrate the absence of a triable issue of material fact. (*Id.*, subd. (c).)

■ In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care *(Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702 [106 Cal.Rptr. 1, 505 P.2d 193]), except in cases where the negligence is obvious to laymen. *(Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 [35 Cal.Rptr.2d 685, 884 P.2d 142].)

Expert testimony is admissible only if based on matter of a type that may reasonably be relied on by an expert in forming an opinion on the subject to which his testimony relates. (Evid. Code, § 801, subd. (b).)

Expert witnesses normally testify concerning the *bases* for their opinions, and the court may *require* the expert to state the bases before giving his opinion. (See Evid. Code, § 802.) Standard instructions give juries the common sense directive that "[a]n opinion is only as good as the facts and reasons on which it is based." (BAJI No. 2.40.) An expert's opinion, even if uncontradicted, may be rejected if the reasons given for it are unsound. *(Kastner v. Los Angeles Metropolitan Transit Authority* (1965) 63 Cal.2d 52,

58 [45 Cal.Rptr. 129, 403 P.2d 385]; *Griffith* v. *County of Los Angeles* (1968) 267 Cal.App.2d 837, 847 [73 Cal.Rptr. 773] [expert opinions, though uncontradicted, are worth no more than the reasons and factual data upon which they are based]; BAJI No. 2.40 ["[Y]ou may not arbitrarily or unreasonably disregard the opinion testimony . . . which was not contradicted . . . unless you find that it is not believable . . . ."].)

■ Applying the foregoing standards here, we conclude that summary judgment was improperly granted.

First, the Herndon declaration was not admissible, because it did not disclose the matter relied on in forming the opinion expressed. The required foundational showing that the opinion rests on matters of a type experts reasonably rely on is not made where, as here, the expert does not disclose what he relied on in forming his opinion. While the deficiency was waived by Kelley's failure to object, we point it out for the benefit of other litigants confronting these issues.

Second, an opinion unsupported by reasons or explanations does not establish the absence of a material fact issue for trial, as required for summary judgment. As the court observed in *Griffith* v. *County of Los Angeles*, *supra*, 267 Cal.App.2d 837, an expert opinion is worth no more than the reasons upon which it rests. Here, the crucial issues were: What was the nature of the disease or condition that required Kelley's surgery? Was it brought on by the laceration? What symptoms of this condition reasonably might have been observable at the time Kelley complained to Dr. Trunk of continuing intense pain unmediated by medication? Should a reasonable doctor at this point in time have recognized the possibility of severe complications? If so, why? If not, why not? Would complications of the kind Kelley eventually suffered have become evident any earlier than three or four days after the laceration? Would earlier intervention have mitigated Kelley's injury? Herndon's declaration addressed none of these issues. Without illuminating explanation, it was insufficient to carry Dr. Trunks's burden in moving for summary judgment.

Third, even if Herndon's opinion standing alone had been sufficient to support summary judgment, in this case a well-credentialed expert presented an *opposing* opinion, giving rise to a material issue of fact for trial: Which expert opinion was correct?

It is not our intent to disparage either the summary judgment procedure, or its appropriate use in malpractice cases. The procedure is a long-established and important part of our civil system. Summary judgment is appropriate in

every case where the statutory standard is met, and the absence of material issues for trial established. However, that standard is not satisfied by laconic expert declarations which provide only an ultimate opinion, unsupported by reasoned explanation.

## DISPOSITION

The judgment is reversed and the case remanded for further proceedings consistent with this opinion. Appellant Kelley shall recover his costs on appeal from respondent Trunk.

Lillie, P. J., and Woods, J., concurred.