Filed 5/9/13  Liu v. Superior Court CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| MARION LIU, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO AUGUSTINE LIU et al., <br><br>     Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, <br><br>     Respondent; <br><br> JANSSEN RESEARCH & DEVELOPMENT, LLC, etc. et al., <br><br>     Real Parties In Interest. | B246461 <br><br> (Los Angeles County <br> Super. Ct. No. BC432264) <br><br> ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING <br><br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on April 19, 2013, be modified by adding the following to the list of counsel.

**Drinker Biddle & Reath, Alan J. Lazarus and John J. Powers for Real Parties in Interest Janssen Pharmaceuticals, Inc. and Janssen Research & Development, LLC.**

**Carroll, Kelly, Trotter, Franzen & McKenna, Sandra J. Carlson and John C. Kelly for Real Party in Interest Clinical Pharmacological Studies, Inc.**

In the disposition paragraph on page 17, the paragraph is modified to read as follows:

**The petition is granted as to plaintiff's causes of action for negligence only and a preemptory writ of mandate hereby issues directing the respondent trial court to vacate that portion of its order of January 11, 2013, granting summary judgment as to plaintiff's cause of action for negligence only (not as to the dismissed claim for dependent adult abuse) against defendants Dr. Valencerina, Lau and CPS and enter a new and different order denying defendants' motion for summary judgment as to plaintiff's cause of action for negligence against Dr. Valencerina, Lau and CPS; and to vacate that portion of its January 9, 2013 order granting summary judgment as to plaintiff's cause of action for negligence only (but not as to the dismissed claims for strict product liability for failure to warn and negligent failure to warn) against Janssen, and enter a new and different order denying defendants' motion for summary judgment as to plaintiff's cause of action for negligence against Janssen. The petition is otherwise denied.  Plaintiff shall recover her costs.**

Petition for Rehearing is denied.

No change in judgment.

| | |
|---|---|
| MOSK, Acting P. J. | O'NEILL, J. |

2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| MARION LIU, INDIVIDUALLY AND AS SUCCESSOR-IN-INTEREST TO AUGUSTINE LIU et al., <br><br>     Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES, <br><br>     Respondent; <br><br> JANSSEN RESEARCH & DEVELOPMENT, LLC, etc. et al., <br><br>     Real Parties In Interest. | B246461 <br><br> (Los Angeles County <br> Super. Ct. No. BC432264) |

ORIGINAL PROCEEDINGS; Petition for Writ of Mandate to Challenge an order of the Superior Court of Los Angeles County, Elizabeth Allen White, Judge.  Petition Granted in Part.

Farrise Firm, Simona A. Farrise; The Arkin Law Firm and Sharon J. Arkin for Petitioner.

No appearance for Respondent.

Bonne, Bridges, Mueller, O'Keefe & Nichols, David J. O'Keefe, William R. Johnson, and Vangi M. Johnson for Real Party in Interest Madeleine Valencerina.

## INTRODUCTION

In a case involving allegations of medical negligence, plaintiff and petitioner, the mother of decedent, petitioned for a writ of mandate to set aside a summary judgment granted by respondent trial court because, according to the trial court, the defendants, real parties in interest, had submitted sufficient evidence of lack of causation and therefore non liability and plaintiff had failed to submit sufficient evidence that any negligence by the defendants proximately caused the death of decedent. The trial court determined that the declaration of plaintiff's expert did not contain a sufficient explanation for his opinion as to proximate cause and therefore was not admissible nor sufficient.

We hold that although defendants submitted admissible evidence as to lack proximate cause, the expert for plaintiff did submit sufficient, admissible evidence of negligence and proximate cause to establish a triable issue of fact. We therefore reverse the summary judgment as to certain negligence causes of action against the real parties in interest.

## BACKGROUND

### A.    Facts[1]

Marion Liu (plaintiff) originally brought the action with her husband a successor in interest to the estate of her son, Augustine Liu II (Liu). During the proceedings her husband died, and she was substituted in as his successor in interest.

---

[1]    We state the facts in accordance with the standard of review discussed *post*.

Liu suffered from schizophrenia.  He also used marijuana and alcohol while on other medications.  Defendant Dr. Madeleine Valencerina (Dr. Valencerina) is a psychiatrist and employee of Kedrens Mental Health Center.  She was also a part owner of defendant Clinical Pharmacological Studies, Inc. (CPS).  Through CPS, Dr. Valencerina conducted clinical drug studies as a principal investigator.  Dr. Valencerina recruited Liu for participation in a drug study of a new formulation of the anti-psychotic drug, Risperidone (used to treat schizophrenia), by defendant Janssen Research and Development, LLC, a pharmaceutical company. [2]

On February 19, 2009, Liu signed documentation provided by Dr. Valencerina purporting to be an informed consent.  On that date an Electrocardiogram (EKG or ECG)[3] was performed, which the result described as "abnormal" with "sinus tachycardia; old myocardial infarction," and noted "non-specific T wave abnormalities possibly secondary to heart disease" and "presents an alert."  Blood was drawn that indicated Liu's liver enzymes were high.  Dr. Valencerina nevertheless concluded Liu was "asymptomatic" based on her discussions with him, in which he denied any family history of cardiac or cardiovascular problems, and she admitted him to the study.

On February 22, 2009, Liu entered defendant College Hospital, Inc., dba College Hospital Cerritos (College Hospital) (not a real party in this proceeding) as a study subject.  On February 23, 2009, another blood draw was taken at 7:15 a.m. that demonstrated that Liu's liver enzyme tests were abnormally high and increasingly so. One half hour after the blood draw was taken, a one milligram dose of Risperidone (the experimental anti-psychotic drug used to treat schizophrenia) was injected into Liu's gluteus muscle.  About two hours after the Risperidone was administered, another ECG

---

[2]     Janssen Research and Development, LLC was formerly known and sued as Johnson & Johnson Pharmaceutical Research & Development, LLC.  Also named are Janssen Pharmaceuticals, Inc. formerly known as Ortho-McNeil-Janssen Pharmaceuticals, Inc.  These defendants are collectively referred to as "Janssen."

[3]     ECG is English—EKG is German from Elektrokardiogramm.

was conducted. The ECG report showed that the cardiac condition was worsening, stating in part: "Junctional tachycardia; right ventricular hypertrophy without secondary ST-T changes; an old myocardial infarction; . . . nonspecific T-wave abnormalities, possibly secondary to heart disease."

On February 25, 2009, another blood draw was taken at 12:05 p.m., which blood test demonstrated that Liu's AST and ALT (liver enzymes) measurements were increasing significantly. Liu was transferred from College Hospital to an acute-care hospital, Coast Plaza, at 8:15 p.m. on that date. Liu died 17 hours later, at 1:29 p.m. on February 26, 2009. There was evidence that Liu's death was the result of the cardiomyopathy in conjunction with other factors (co-morbidities), including multiple organ injury or failure, thrombocylopenia, and pneumonia.

## PROCEDURAL BACKGROUND

Plaintiff sued defendants Janssen, Dr. Valencerina, Dr. Kei-Chen-Lau (Lau) and CPS, who are the real parties in interest, and defendants College Hospital and Dr. Robert Collen (Collen). Plaintiff's fourth amended complaint included the following causes of action relevant to this proceeding: First Cause of action for dependent adult abuse against Dr. Valencerina under Welfare and Institutions Code section 15610.07 et seq.; second cause of action for negligence against Dr. Valencerina, Lau and Collen, CPS, Janssen and College Hospital; fourth cause of action for products liability for failure to warn against Janssen; and fifth cause of action for negligent failure to warn against Janssen. Other causes of action and defendants were dismissed.[4] Plaintiff alleged that each defendant, in doing the acts alleged, acted as agents of each of the other named

---

[4]     Real Parties in Interest are sometimes referred to as defendants.

4

defendants. Defendants did not raise lack of agency in their summary judgment motions.[5]

The defendants filed motions for summary judgment and summary adjudication. The respondent trial court (trial court) overruled objections to declarations submitted by defendants and sustained objections to portions of the expert's declarations submitted by plaintiff. The trial court denied the summary judgment motions as to defendants Collen and College Hospital, but granted them as to defendants Dr. Valencerina, Lau, CPS, and Janssen—the real parties in interest.[6]

In the petition for writ of mandate, plaintiff seeks to have the trial court vacate its summary judgment as to the real parties in interest. This court granted an alternative writ of mandate directing the trial court to vacate that portion of its order granting summary judgment as to plaintiff's cause for negligence only (not as to the dismissed claims for dependent adult abuse, strict product liability for failure to warn and negligent failure to warn) against defendants Dr. Valencerina, Lau, CPS, and Janssen and to enter a new order denying the motions or to show cause why not. Following a hearing pursuant to *Brown, Winfield & Canzoneri, Inc. v. Superior Court* (2010) 47 Cal.4th 1233, 1250, fn. 10, the trial court ultimately determined not to set aside its order granting the summary judgment, thereby declining to comply with the alternative writ, and thus, respondent trial court was required to show cause before this court why a peremptory writ should not issue.

---

**5** General allegations of agency are sufficient. (*Skopp v. Weaver* (1976) 16 Cal.3d 432, 437.)

**6** The trial court sustained the expert declarations as to any conclusion that the administration of Risperidone was a substantial factor in causing Liu's death. The trial court concluded that as to other allegations of negligence, the expert's declarations were insufficient to raise a triable issue of fact as to causation.

5

## DISCUSSION

### A.    Standard of Review

Our review of the trial court's rulings on the summary judgment motions is governed by the well established principles.  "'"A  trial court properly grants a motion for summary judgment only if no issues of triable fact appear and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); see also *id.,* § 437c, subd. (f) [summary adjudication of issues].)  The moving party bears the burden of showing the court that the plaintiff 'has not established, and cannot reasonably expect to establish,'" the elements of his or her cause of action.  (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460 [30 Cal.Rptr.3d 797, 115 P.3d 77].)'  (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 720 [68 Cal.Rptr.3d 746, 171 P.3d 1082].)  We review the trial court's decision de novo, liberally construing the evidence in support of the party opposing summary judgment and resolving doubts concerning the evidence in favor of that party.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037 [32 Cal.Rptr.3d 436, 116 P.3d 1123].)"  (*State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1017-1018.)  "[W]e must construe plaintiff's evidence liberally and accept all reasonable inferences which could be drawn by a trier of fact in favor of plaintiff."  (*Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 854.)

"We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  (*Artiglio v. Corning, Inc.* (1998) 18 Cal.4th 604, 612 [76 Cal.Rptr.2d 479, 957 P.2d 1313].)  In the trial court, once a moving defendant has 'shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established,' the burden shifts to the plaintiff to show the existence of a triable issue; to meet that burden, the plaintiff 'may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of

6

material fact exists as to that cause of action . . . .' (Code Civ. Proc., § 437c, subd. (o)(2); see *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 854-855 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).)" (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476-477.)

Summary judgment is a drastic measure that deprives the losing party of a trial on the merits. [Citation]. It should therefore be used with caution, so that it does not become a substitute for trial. [Citation.] The affidavits of the moving party should be strictly construed, and those of the opponent liberally construed. [Citation.] Any doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. [Citation.]" (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107,[7] superseded by statute on other grounds as stated in *Aguilar, supra,* 25 Cal.4th at p. 853, fn. 19.)

## B. Defendants Have Met Their Burden

As noted, a defendant meets its burden in a summary judgment motion that a cause of action has no merit by showing that "one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2).) Then the "burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto." (*Ibid.*) In a professional malpractice action, expert opinion is required to prove or disprove that the defendant performed in accordance with the prevailing

---

**7** Although the granting of a motion for summary judgment "is no longer called a 'disfavored remedy.' . . . [i]t has become the target of criticism on a number of fronts." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 248; see *Binder v. Aetna Life Ins. Co., supra,* 75 Cal.App.4th at p. 838 ["Although summary judgment might no longer be considered a 'disfavored' procedure [citation], the rule continues that the moving party's evidence must be strictly construed, while the opposing party's evidence must be liberally construed"]; see also *Reader's Digest Assn. v. Superior Court* (1984) 37 Cal.3d 244, 252 ["It is pointless to declare in the abstract that summary judgment is a favored or disfavored remedy"].)

standard of care; except when the alleged negligence would be obvious to a layman. (*Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523.)  Plaintiff asserts that the expert declarations submitted by defendants were not sufficient to shift the burden.

Defendants filed with their motions for summary judgment, declarations of doctors Michael B. Fowler and C. Alan Brown containing their expert opinions that provide, in essence, the following:  The one milligram dose of Risperidone was not a substantial contributing factor in causing Liu's liver failure nor did it exacerbate an already deteriorating cardiac condition; Liu had liver congestion caused by his preexisting heart failure associated with dilated cardiomyopathy; Liu had long-standing heart disease that was unrelated to his participation in the drug test; Liu's heart disease was so extensive and longstanding that there was no available treatment, other than a transplant, and he did not meet the standards for such a procedure because of his abuse of alcohol and drugs and his mental illness; to a reasonable medical probability, Liu's death was unavoidable and could not have been prevented even if he had been excluded from the study; there was nothing that could have been done between February 20, 2009 and February 25, 2009 that would have prevented Liu's death; Liu's death was not caused by any act or omission of real parties in interest.[8]

Plaintiff has asserted that had the trial court applied the correct standards, it should have excluded defendants' declarations as not providing a reasonable explanation for the conclusions.  Those declarations specify Liu's conditions—cardiomyopathy, enlarged heart, low rejection factor—but do not state why emergency care procedures would not have prolonged Liu's life.  Plaintiff asserts that she never contended that Risperidone caused Liu's cardiomyopathy—but rather contributed to his heart failure, liver failure and death, and that the experts did not address this issue.  She also argues that the experts do not discuss the possible treatments, why the liver enzymes reading increased so rapidly after the Risperidone injection, and exactly why Liu's death was inevitable within a

---

[8] Contrary to defendants' argument, Dr. Fowler did opine on the standard of care, saying that "Mr. Liu did not present as a patient with an emergent cardiac condition."

week. She also points out that she does not say the participation in the study per se caused or contributed to Liu's death; rather it was the decision to admit him to the study rather than to refer him immediately for a cardiac workup after the initial ECG and blood test results demonstrated the existence of serious cardiac problems and elevated liver enzymes; and why Liu's deteriorating condition was ignored. Plaintiff contends that the trial court correctly rejected the expert's declarations in denying the motions by Collen and College Hospital and therefore should have applied the same standard to reject the declarations submitted by defendants (real parties in interest).

A person who qualifies as an expert may give opinion testimony if the subject matter of the opinion "is sufficiently beyond common experience that the opinion of [the] expert would assist the trial of fact." (Evid. Code, § 801, subd. (a); see *People v. Gardeley* (1996) 14 Cal.4th 605, 617-618.) A qualified medical expert's testimony is required to prove or disprove that a defendant performed in accordance with the applicable standard of care. (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305.) And the medical expert may testify on issues of causation. (*Jennings v. Palomar Pomerado Health Systems, Inc.* (2003) 114 Cal.App.4th 1108, 1117 (*Palomar*).) Expert testimony may be excluded if based on assumptions without supporting evidence, or on speculation or conjecture, or when the opinion is purely conclusory without a reasoned explanation. (*Id.* at pp. 1117-1118.)

There is no dispute over the qualification of Doctors Brown and Fowler. Moreover, both doctors stated that they had reviewed all the relevant documentation. Dr. Brown essentially opined that nothing Dr. Valencerina did or did not do constituted a substantial factor in causing Liu's death. Dr. Brown explained this conclusion by explaining Liu's conditions that made his death unavoidable, and that nothing could have been done between February 20, 2009 and February 25, 2009 to prevent Liu's death. He also opined that based on Liu's preexisting condition, neither the study nor the Risperidone contributed to Liu's death.

9

Dr. Fowler came to the same conclusion as Dr. Brown, based on Dr. Fowler's assessment of Liu's condition. He noted that after the Risperidone injection, Liu's vital signs remained stable, and the autopsy indicated that Risperidone in Liu's system was not detected. He also said that based on Liu's condition, albeit abnormal, emergency treatment was not necessary and would not have prevented death in any event. It should be noted that Dr. Fowler said that "it would be entirely speculative to assume that any treatment could have any affect [*sic*] in preventing [Liu's] death." He did later say that he did not "believe that any treatments could have been instituted that, to a reasonable degree of medical probability, would have prevented Mr. Liu's death on February 26, 2009."

It may be that there could have been further explanation of the conclusions, but we believe that the trial court properly admitted both of these expert declarations submitted by defendants as satisfying the requirements for admission and were sufficient to shift the burden to plaintiff to show a triable issue of fact on causation. Both expert opinions are based on facts with evidentiary support. Both experts provide some reasoned explanation with facts that supports the conclusions. And neither expert opinion is based on pure speculation or conjecture. Thus, the burden properly shifted to plaintiff to supply sufficient evidence to establish triable issues of fact on causation.

## C.    Plaintiff Has Established Triable Issues of Fact

Plaintiff submitted the declarations of Doctors Jay N. Schapira, a cardiologist, and James O. Donnell, a pharmacologist. Just as defendants' experts, these experts have unchallenged qualifications and have reviewed all the relevant documentation. Dr. Schapira stated that the medical records reflect sufficient cardiac and liver abnormalities such that further testing or referral to a cardiac specialist should have been undertaken and that the failure to do so by Dr. Valencerina constituted a breach of the standard of care. Moreover, he opined that based on the medical records, admitting to a study a person in Liu's condition without further testing and treatment also constituted a breach

10

of standard of care. The failure to transfer Liu to an acute care hospital after the February 23, 2009, blood draw and instead just ordering a repeat test was reckless and constituted a breach of the standard of care.

Dr. O'Donnell came to the same conclusions as Dr. Schapira and added that the injection of Risperidone was a substantial factor in causing Liu's liver failure and that defendants, by admitting Liu to the study, breached the "appropriate standard of care as clinical investigators and sponsors of an investigational drug-study."

By these expert opinions, plaintiff has established a triable issue of fact as to the issue of negligence. The trial court did not dispute this conclusion. Rather the trial court concluded that as a matter of law, plaintiff could not prevail because her experts' opinions on causation were insufficient.

Dr. Schapira, after concluding that it was a breach of the standard of care not to transfer Liu for tests and treatment on an emergency basis, opined, "It is my opinion to a reasonable degree of medical certainty and based on my experience, training and education, that had an emergency transfer to an acute care hospital been made in the face of the February 23 liver function tests, there is a better than 50% chance that decedent could have been successfully treated and would have survived."

Defendants argued and the trial court agreed that the declaration of Dr. Schapira did not contain a reasoned explanation as to what treatment at an acute care hospital after the liver function test showed increasingly elevated liver enzymes would have given Liu a better than 50 percent chance of avoiding death from dilated cardiomyopathy, which defendants' expert Dr. Fowler indicated was not treatable and could not have been avoided as Liu was not a heart transplant candidate. Thus, the trial court determined that plaintiff had failed to raise a triable issue of fact on causation. The trial court also did not admit the expert evidence that Risperidone was a substantial factor in Liu's death.

The trial court erred in rejecting Dr. Schapira's opinion on causation, whether we review that decision based on the abuse of discretion or de novo standards. (See *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 535; *Howard Entertainment, Inc. v. Kudrow* (2012)

11

208 Cal.App.4th 1102, 1114.) The Supreme Court has stated courts may infer conclusions from the factual statements of experts in medical practice cases and that "it was error for the trial court to reject his declaration on the grounds that it was conclusory." (*Mann v. Cracciolo* (1985) 38 Cal.3d 18, 37.)

In *Powell v. Kleinman* (2007) 151 Cal.App.4th 112, the court reversed a summary judgment in favor of a defendant doctor in a malpractice case because the trial court erroneously excluded evidence from the declaration of plaintiff's expert opposing summary judgment. In doing so, the court stated that while a defendant's expert declaration has to be detailed in order to obtain a summary judgment, a plaintiff's declaration in opposition to a summary judgment does not "have to be detailed [and, is] entitled to all favorable inferences . . . ." (*Id.* at p. 125.) The court repeated that "we liberally construe the declarations of the plaintiff's experts and resolve any doubt as to the propriety of granting the motion in favor of the plaintiff." (*Ibid.*) In that case, the expert for the plaintiff "opined that it is medically probable [that defendant's] care and treatment caused [plaintiff] injury." (*Id.* at p. 129.) The court said, "However, obtuse [the expert's] declaration may appear, as a party opposing summary judgment, [plaintiff] is entitled to *all favorable inferences* that reasonably may be derived from it, which includes a reading of the declaration to state that [plaintiff's] injuries were caused by [defendant's] conduct, which conduct fell below the applicable standard of care." (*Ibid.*)

Likewise, in *Hanson v. Grode* (1999) 76 Cal.App.4th 601, 606-608, the court in reversing a summary judgment in favor of defendant doctor, held that plaintiff's expert declaration was sufficient. The court stated, "Defendants fare no better on the element of causation. [The expert] states that [plaintiff] suffered nerve damage during the surgery and that the care defendants provided was a cause of his injuries. Although the style of the [expert] declaration is at times a bit obtuse, [plaintiff] is entitled to all favorable inferences that may reasonably be derived from that declaration. These inferences include a reading of the declaration to state that the nerve damage [plaintiff] suffered during surgery was caused by the conduct of defendants, which conduct fell below the

12

applicable standard of care.  Nothing more was needed." (*Id.* at pp. 607-608.)  The court added, "The recent case of *Kelley v. Trunk* (1998) 66 Cal.App.4th 519 [78 Cal.Rptr.2d 122] suggests that even on summary judgment, an expert's declaration must set forth in excruciating  detail the factual basis for the opinions stated therein.  We find this approach, under which all of the expert declarations in the same case would have to be deemed inadequate, to be unsupported.  Accordingly, we decline to utilize it." (*Id.* at p. 608, fn. 6.)  We agree with the court's position in *Hanson v. Grode* as to *Kelley v. Trunk*, which involved a moving-party declaration in any event.

In *Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173 (*Garrett*), the plaintiff, a patient, sued the supplier of a prosthetic bone for product liability.  The court reversed a summary judgment in favor of the defendant.  The defendant had argued that the declaration of plaintiff's expert was not admissible because it lacked a reasoned analysis of the conclusion because, in part, the expert did not describe the testing methods employed.  The court acknowledged the court's "gate-keeping" function for expert testimony enunciated by the Supreme Court in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 781.  The court said, "Unlike *Sargon, supra*, 55 Cal.4th 747, this case involves the exclusion of expert testimony presented in opposition to a summary judgment motion.  The trial court here did not conduct an evidentiary hearing, and there was no examination of an expert witness pursuant to Evidence Code section 802.  Absent more specific information on the testing methods used and the results obtained, the trial court here could not scrutinize the reasons for Kashar's opinion to the same extent as did the trial court in *Sargon*. We do not believe, however, that the absence of such detailed information justified the exclusion of [the expert's] testimony.  [¶]  The rule that a trial court must liberally construe the evidence submitted in opposition to a summary judgment motion applies in ruling on both the admissibility of expert testimony and its sufficiency to create a triable issue of fact. [Citations.]  In light of the rule of liberal construction, a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as

13

detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial. [Citations.] Liberally construing the [expert's] declaration, we conclude that the explanation provided for [the expert's] opinion was sufficient and that the trial court could not properly exclude the expert testimony based on [the expert's] failure to identify the particular tests employed or describe the test results. [¶] We therefore hold that the trial court failed to liberally construe the declaration as required, and that the sustaining of the objections to the [the expert's] declaration based on Evidence Code sections 801, subdivision (b) and 802 was an abuse of discretion." (*Garrett, supra,* 214 Cal.App.4th at pp. 189-190.)

Defendants assert that these cases are either inconsistent with other cases or are factually different than the instant case. We believe the principles enumerated in these cases are applicable here.

There are cases arising out of summary judgment that seem to apply the same evidentiary standards of admissibility to the experts of the party opposing summary judgment as to the experts of the party making the summary judgment motion. In *Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, the court stated, that the "injury occurred 'more probably than not' from the events they list in their declaration [is a] conclusion [that] is no more than speculation if there is no factual basis for those events [and therefore] of no evidentiary value on the question of negligence or causation." The dissent points out that according to the rule of *Molko v. Holy Spirit Assn., supra,* 46 Cal.3d at page 1107, declarations in opposition to a summary judgment motion are treated differently than those supporting the motion and the expert declarations in question were sufficiently detailed. (*Bushling v. Fremont Medical Center, supra,* 117 Cal.App.4th at p. 511; *id.* at p. 516 (conc. & dis. opn. of Sims, J.).)

In *Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761, the court in affirming a trial court's sustaining of objections to an expert's declaration said the "same rules of evidence that apply at trial also apply to the declarations submitted in support of and in opposition to motions for summary judgment." But as noted in *Garrett, supra,*

14

214 Cal.App.4th at pages 189 to 190, there is a distinction because of the difference in the treatment of declarations of opposing and supporting parties.

In *Palomar, supra,* 114 Cal.App.4th at pages 1119-1120, the court held in that case that the trial court properly struck the testimony of an expert witness concerning causation because the opinion was "too conclusionary" and lacked a "reasoned explanation." There, the expert opined that the surgical retractor could have provided a medium for bacteria to grow inside plaintiff and that the "bacteria growing around the retractor were a cause-in-fact of the infection." (*Id.* at p. 1119.) This case involves trial testimony. Thus, the court did not employ the inferences to a declaration submitted by an expert opposing summary judgment. To the extent these and other cases cited by defendants may be inconsistent with the cases we rely upon, we elect to follow the reasoning in the cases upon which we rely for the reason stated in those cases. In our view, that reasoning is consistent with the standards and principles applicable to summary judgments.

This case arises on summary judgment. Moreover, Dr. Schapira not only concluded that it was more probable than not that had Liu timely been transferred on an emergency basis to an acute care hospital because of his condition, he could have been successfully treated and would have survived. He also spelled out that the failure to transfer, test, assess and, treat Liu on the basis of the February 19th or February 23rd tests was reckless and constituted a breach of the standard of care. Inferable from this opinion is that had the acts or omissions not been reckless, Liu could have been treated. There would have been no point in the emergency care unless there were treatments available to have saved Liu's life. Schapira should not be required to set forth the precise treatments available at this stage. That might be a basis for cross-examination at trial.

Even if the evidence regarding Risperidone should have been excluded as to causation, drawing the necessary inference in the light most favorable to the opposing party (*Aguilar, supra,* 25 Cal.4th at pp. 844-845), the improper care afforded Liu was sufficient to support the causation conclusion, if such support is necessary. The expert's

15

opinion on causation should not have been omitted or deemed insufficient at this stage.[9] That opinion on causation was sufficient to establish a triable issue of fact on causation. Accordingly, the summary judgment in favor of defendants on negligence should be vacated.

### D.    Agency

Plaintiff alleged that each of the defendants was the agent of the other. Defendant Janssen has not contested plaintiff's argument that Dr. Valencerina was acting as its agent. Plaintiff also argues that since the trial court denied the summary judgments as to defendants Collen and College Hospital, the remaining defendants are vicariously liable. The issue was not raised until plaintiff's reply to the returns. In view of our conclusion, we need not reach this issue.

### E.    Other Causes of Action

In its petition, plaintiff also asserted that the trial court's summary determination on the Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, §§ 15600 et seq.) claims constituted error. After the alternative writ was issued suggesting that the trial court's determination on that issue not be set aside, plaintiff has not reargued that contention. This court denied the petition concerning the claims for dependent adult abuse, as well as claims for strict product liability for failure to warn and negligent failure to warn.

---

[9]    We render no opinion on the merits or on evidentiary issues that might arise at trial.

16

**DISPOSITION**

The preemptory writ of mandate is issued directing the respondent trial court to vacate that portion of its order of January 11, 2013, granting summary judgment as to plaintiff's cause of action for negligence only (not as to the dismissed claim for dependent adult abuse) against defendants Dr. Valencerina, Lau and CPS and enter a new and different order denying defendants' motion for summary judgment as to plaintiff's cause of action for negligence against Dr. Valencerina, Lau and CPS; and to vacate that portion of its January 9, 2013 order granting summary judgment as to plaintiff's cause of action for negligence only (but not as to the dismissed claims for strict product liability for failure to warn and negligent failure to warn) against Janssen, and enter a new and different order denying defendants' motion for summary judgment as to plaintiff's cause of action for negligence against Janssen. Plaintiff shall recover her costs.

MOSK, Acting P. J.

I concur:

O'NEILL, J.*

---

*       Judge of the Ventura Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

KRIEGLER, J., Dissenting.


I respectfully dissent.  The declaration of plaintiff's expert, Dr. Jay Schapira, speculates that Augustine Liu, III, had a better than 50 percent chance of being successfully treated and surviving had he been transferred on an emergency basis to an acute care hospital on February 23, 2009.  Dr. Schapira provided no explanation for how someone with Liu's medical issues might have been treated and survived.  The trial court was left to speculate as to how survival might have occurred in this circumstance— whether from medication, surgery, or divine intervention.  The declaration is insufficient as a matter of law to demonstrate a triable issue of material fact which defeats summary judgment.  (*Bozzi v. Nordstrom, Inc*. (2010) 186 Cal.App.4th 755, 761; *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 524.)  I would deny the petition for writ of mandate.


KRIEGLER, J.