Filed 2/26/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DANIEL RYAN et al., Individually and as Trustees, etc., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> REAL ESTATE OF THE PACIFIC, INC., et al., <br><br> Defendants and Respondents. | D072724 <br><br><br> (Super. Ct. No. 37-2015-00029723-CU-PN-CTL ) |

APPEAL from a judgment of the Superior Court of San Diego County,

Richard E. L. Strauss, Judge.  Reversed; remanded with directions.

Gordon & Rees Scully Mansukhani, M.D. Scully and Matthew G. Kleiner for

Plaintiffs and Appellants.

Thompson Coe & O'Meara, Frances M. O'Meara and Stephen M. Caine for

Defendants and Respondents.

Real Estate of the Pacific, Inc., doing business as Pacific Sotheby's International

Realty (Sotheby's), David Schroedl, and David Schroedl & Associates (DSA) (Sotheby's,

Schroedl, and DSA collectively Defendants) successfully moved for summary judgment

against Daniel Ryan and Patricia Ryan, individually and as trustees of the Ryan Family Trust Dated August 25, 2006 (the Ryans). The crux of Defendants' argument was that the Ryans could not establish the existence of any cause of action without an expert witness. Because the Ryans did not designate an expert witness, Defendants argued summary judgment was warranted. The superior court agreed, granting Defendants' motion.

The Ryans appeal the judgment following Defendants' successful motion, contending they do not need an expert witness to establish the elements of their causes of action against Defendants. We agree and reverse the judgment.[1]

I

FACTUAL AND PROCEDURAL BACKGROUND

The Sale of Real Property and Subsequent Arbitration

In September 2013, the Ryans decided to sell their single family house located at 821 Havenhurst Point, La Jolla, California (the Property). To this end, the Ryans entered into a trust listing agreement with Defendants wherein the Ryans agreed to give Defendants the exclusive right to sell the Property. As such, Defendants undertook to list, market, and sell the Property and provided the Ryans with their "professional guidance and advice throughout all states and aspects of the listing, marketing, and sale of [the Property]."

---

[1] After Defendants' successful motion for summary judgment, the Ryans moved for a new trial. The superior court denied that motion. The Ryans also appeal the order denying their motion for a new trial. Because we reverse the judgment based on the Ryans' arguments regarding the motion for summary judgment, we do not reach any issues raised by the motion for a new trial.

During an open house hosted by Schroedl, the Ryans' next door neighbor, Hany Girgis, informed Schroedl that he intended to remodel his home, which would permanently obstruct the Property's westerly ocean view. Girgis also told Schroedl that the planned construction would have a significant impact on the Property. Specifically, the construction would: (1) move the footprint of Girgis's home to within five feet of the common boundary, (2) create a two-story wing with large windows overlooking the pool area of the Property, (3) take up to two years to complete, and (4) require extensive excavation and removal of several hundred yards of dirt. Schroedl never informed the Ryans regarding Girgis's plans.

On December 5, 2013, Ney and Luciana Marinho (the Marinhos) purchased the Property for $3.86 million. Defendants received $96,5000 at the close of escrow as their commission for the sale. At no time prior or during escrow, in the real estate disclosures, or in conversation, did Defendants disclose Girgis's extensive remodeling plans or their impact on the westerly ocean view and privacy of the Property.

The day after escrow closed, the Marinhos' interior decorator talked with Girgis, who told her of his extensive remodeling plans. After learning this information, the Marinhos immediately attempted to rescind the real estate sales contract for several reasons, including the magnitude and scope of the Girgis remodel, the proximity of the new structure to the property line, the loss of privacy, the elimination of any possibility of a westerly ocean view, and a potential two-year construction project.

The Ryans, based in part on Defendants' advice, refused to rescind the purchase real estate sales contract. The Marinhos then demanded arbitration per the terms of the

3

real estate sales contract and sought rescission of the contract or, in the alternative, damages. The Marinhos alleged Defendants knew about Girgis's construction plans and failed to disclose this information.

The dispute proceeded to arbitration. After "extensive litigation, investigation and discovery" as well as an arbitration hearing, the arbitrator ruled in favor of the Marinhos. Accordingly, the arbitrator ordered that the real estate purchase contract be rescinded with the Ryans returning the $3.86 million purchase price to the Marinhos and title and possession of the Property transferred back to the Ryans. The arbitrator further ordered the Ryans to pay damages, prejudgment interest, costs and attorney fees in excess of $1 million.

In support of the award, the arbitrator made detailed written findings of fact and conclusions of law. As relevant here, the arbitrator concluded:

> "The Girgis construction project was a material fact affecting the value or desirability of the subject property. [¶] . . . [¶] [Schroedl] knew that Girgis had plans to construct a major remodel of his home. His failure to disclose this fact was a material breach of his duty to the [Marinhos], as well as conduct that fell below the standard of care. [¶] [Schroedl] failed to relate to [the Ryans] current information about the Girgis project. His failure to do so was a breach of his agency obligations." (fn. omitted.)

Further, the arbitrator noted that Schroedl "did not have a credible explanation" regarding why he did not inform the Ryans or the Morinhos' broker "what he learned from Girgis about his construction plans." The arbitrator also specifically questioned Schroedl's motivations for his actions: "One is left to speculate whether a 21-day, all

4

cash escrow, involving buyers from thousands of miles away, that would garner a $95,500 commission, were considerations."[2]

### The Complaint in the Instant Action

After arbitration, the Ryans filed this lawsuit against, among others, Defendants seeking to recover the money paid to the Morinhos and damages caused by Defendants' alleged negligence. The complaint alleged six causes of action against Defendants: (1) negligence, (2) breach of fiduciary duty, (3) breach of implied covenant of good faith and fair dealing, (4) equitable indemnity and apportionment, (5) common count-mistaken receipt, and (6) common count-money had and received. The foundation of the Ryans' claims against Defendants was that Defendants were aware of Girgis's construction plans and did not inform the Ryans or the Morinhos about those plans.

### Motion for Summary Judgment

Defendants moved for summary judgment claiming the Ryans could not "prove an essential element of all causes of action against" Defendants, namely that they "breached a duty to" the Ryans. To this end, Defendants argued that all six of the Ryans' causes of action were premised on professional negligence, and, as such, "expert testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care. *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 523 [(*Kelley*)], citing, *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702." In other words, because the Ryans had not designated an expert, they could not establish the

---

[2]   The arbitrator referenced a $95,500 commission. The Ryans' complaint against Defendants alleged Defendants received a $96,500 commission.

prevailing standard of care or that Defendants breached that standard of care. Thus, summary judgment was warranted.

In opposition, the Ryans maintained that expert testimony was not required because of the findings of fact and conclusions of law regarding the standard of care in the arbitration between the Marinhos and the Ryans. The Ryans asserted that the arbitration award collaterally estopped Defendants from relitigating the standard of care issue.

After entertaining oral argument, the superior court granted Defendants' motion for summary judgment. The court found that Defendants satisfied their burden by claiming that all the Ryans' causes of action require an expert witness to prove a necessary element. The court noted that the Ryans did not designate an expert, and the Ryans "do not dispute their claims require expert testimony regarding the standard of care." Further, the court rejected the Ryans' argument that collateral estoppel applies to Defendants based on an arbitration to which Defendants were not a party.

The Ryans timely appealed the ensuing judgment.

II

DISCUSSION

A. Summary Judgment and Standard of Review

The standard of review for an order granting a motion for summary judgment is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).)

In performing our independent review, we apply the same three-step process as the trial court. "Because summary judgment is defined by the material allegations in the

6

pleadings, we first look to the pleadings to identify the elements of the causes of action for which relief is sought." (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151, 159 (*Baptist*).)

"We then examine the moving party's motion, including the evidence offered in support of the motion." (*Baptist*, *supra*, 143 Cal.App.4th at p. 159.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc.,[3] § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.)

If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002-1003.)

In determining whether the parties have met their respective burdens, "the court must 'consider all of the evidence' and 'all' of the 'inferences' reasonably drawn therefrom [citations], and must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar*, *supra*, 25 Cal.4th at p. 843.) "There is a triable issue of material fact if, and only if, the evidence would allow a

---

3    Statutory references are to the Code of Civil Procedure unless otherwise specified.

7

reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id*. at p. 850, fn. omitted.) Thus, a party "cannot avoid summary judgment by asserting facts based on mere speculation and conjecture, but instead must produce admissible evidence raising a triable issue of fact." (*LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 981.)

## B. Analysis

### 1. Forfeiture

The heart of the appeal before us is whether the lack of an expert witness is fatal to the Ryans' claims against Defendants. However, as a threshold matter, we address Defendants' assertion that the Ryans have forfeited their arguments here by failing to raise them below. Specifically, Defendants' claim the Ryans never advanced the "common knowledge" theory in opposition to the motion for judgment. This theory states an expert witness is not needed to establish the standard of care in a professional negligence cause of action when the conduct required by the particular circumstances is within the common knowledge of a layman. (See *Flowers v. Torrance Memorial Hospital Medical Center* (1994) 8 Cal.4th 992, 1001 (*Flowers*).) Therefore, Defendants assert the Ryans should not be able to argue on appeal, in the first instance, that an expert witness is not needed under the common knowledge theory. (Cf. *Ford Motor Credit Co. v. Hunsberger* (2008) 163 Cal.App.4th 1526, 1531; *Ochoa v. Pacific Gas & Electric Co.* (1998) 61 Cal.App.4th 1480, 1488, fn. 3.)

8

We agree that the Ryans did not argue the common knowledge theory below. Instead, they maintained that an expert witness was not needed because the issue of the standard of care owed by Defendants was resolved in the arbitration and that arbitration determination collaterally estopped Defendants from relitigating the issue of the standard of care. That argument was not successful in the superior court, and the Ryans have not offered it on appeal. As such, it has been abandoned, and we do not address it. (See *Wall Street Network, Ltd. v. New York Times Co.* (2008) 164 Cal.App.4th 1171, 1177.)

That said, the common knowledge theory now posited by the Ryans presents a new question of law based on undisputed facts. The Ryans can make such an argument for the first time on appeal. (See *Nippon Credit Bank v. 1333 North Cal. Boulevard* (2001) 86 Cal.App.4th 486, 500 ["A legal argument may be raised for the first time in a new trial motion or an appeal only 'so long as the new theory presents a question of law to be applied to undisputed facts in the record.' "], citing *Hoffman-Haag v. Transamerica Ins. Co.* (1991) 1 Cal.App.4th 10, 15.) We thus reach the merits of the Ryans' arguments.

## 2. The Ryans' Causes of Action

The Ryans' have alleged six causes of action against Defendants. All six of those actions are based on the same basic facts: Defendants were aware of Girgis's construction plans, those plans would negatively impact the value of the Property, and Defendants did not inform the Ryans about Girgis's construction plans. Thus, the Ryans' claims are contingent on Defendants having a duty to share the subject information.

## 3. Defendants' Burden

Here, Defendants claim all six of the Ryans' causes of action require the Ryans to prove professional negligence. Defendants maintain the Ryans must have an expert witness to do so. Thus, Defendants claim that, because the Ryans did not designate an expert, summary judgment is warranted.

For purposes of their arguments here, Defendants do not dispute any of the facts in the complaint. Instead, they contend, under the allegations of the complaint, an expert witness is required for the Ryans to prove the elements of their causes of action as a matter of law. Thus, for the Defendants to satisfy their initial burden for summary judgment and shift the burden to the Ryans to prove the existence of a triable issue of material fact, they must show that an expert witness is essential for the Ryans' claims as alleged.

To carry their burden, Defendants must do more than merely assert that an expert witness is required to prove the Ryans' causes of action. They must explain why, under the facts as pled, the lack of an expert witness is fatal to all of the Ryans' claims. As we explain *post*, Defendants have not carried their burden.

10

California law does not require an expert witness to prove professional malpractice in all circumstances. "In professional malpractice cases, expert opinion testimony is required to prove or disprove that the defendant performed in accordance with the prevailing standard of care [citation], except in cases where the negligence is obvious to laymen." (*Kelley, supra,* 66 Cal.App.4th at p. 523.) Defendants argue that the instant matter is not one of those cases where the alleged negligence is obvious to laymen.

Defendants characterize their alleged breach as arising from "a duty to disclose 'material facts relating to the planned future development of a *neighboring property* that would adversely affect the value and desirability of [the Property].' " They maintain that a real estate broker's duty to inspect and disclose material facts was established in *Easton v. Strassburg* (1984) 152 Cal.App.3d 90 (*Easton*) and codified in Civil Code section 2079. Subdivision (a) of that section states:

> "It is the duty of a real estate broker or salesperson, licensed under Division 4 (commencing with Section 10000) of the Business and Professions Code, to a prospective buyer of single-family residential real property or a manufactured home as defined in Section 18007 of the Health and Safety Code, to conduct a reasonably competent and diligent visual inspection of the property offered for sale and to disclose to that prospective buyer all facts materially affecting the value or desirability of the property that an investigation would reveal, if that broker has a written contract with the seller to find or obtain a buyer or is a broker who acts in cooperation with that broker to find and obtain a buyer."

Defendants reiterate that their duties of investigation and disclosure, as real estate brokers, are limited to the property being sold. (See Civ. Code §§ 2079, subd. (a),

11

2079.3.) To this end, Defendants urge us to follow *Padgett v. Phariss* (1997) 54 Cal.App.4th 1270 (*Padgett*).

In *Padgett*, the real estate agent did not know and therefore did not disclose to the buyers that there was a soil subsidence problem in common areas of the development and that the homeowners' association had filed a lawsuit against the developer. The buyer discovered the litigation after escrow closed and sued for breach of fiduciary duty, among other claims. (*Padgett*, *supra*, 54 Cal.App.4th at pp. 1276-1277.) The trial court granted summary judgment, and we affirmed, concluding that the buyer's real estate agent had no actual or imputed knowledge of any defects in the property and thus no duty to inquire further. (*Id.* at pp. 1278, 1286.)

Unlike the real estate agent in *Padgett*, it is undisputed that Defendants were aware of Girgis's construction plans for the neighboring property. Further, the Defendants did not tell the Ryans about the construction plans. As such, the Ryans are not asserting that the Defendants had to engage in further investigation of a neighboring property or had some duty to discover Girgis's construction plans. Instead, the core of the Ryans' claim of breach is that the Defendants did not disclose material information (that the Defendants possessed) and that information had an adverse impact on the value of the Property. Therefore, this case is nothing like *Padgett,* and we do not find *Padgett* instructive here.

In addition, we are not persuaded by Defendants' reliance on Civil Code section 2079. Although we agree that that statute sets forth some of the duties of a real estate broker, it is not the only source of a broker's duties. "Real estate brokers are

12

subject to two sets of duties: those imposed by regulatory statutes, and those arising from the general law of agency." (*Carleton v. Tortosa* (1993) 14 Cal.App.4th 745, 755.) Here, the Ryans' claims are not contingent on an expansion of the statutorily defined duties of a real estate broker. Instead, their claim is more elementary. If a real estate broker has information that will adversely affect the value of a property he or she is selling, does that broker have a duty to share that information with his or her client? The clear and uncontroversial answer to that question is yes.

"Under the common law, unchanged by *Easton* and [Civil Code] section 2079, a broker's fiduciary duty to his client requires the highest good faith and undivided service and loyalty." (*Field v. Century 21 Klowden-Forness Realty* (1998) 63 Cal.App.4th 18, 25.) The Ryans entered into an agreement whereby Defendants were to sell the Ryans' home. Defendants were compensated based on a percentage of the sales price. Thus, while the Ryans would benefit from a higher sales price, so would Defendants. Further, if Defendants had some knowledge that could impact the sales price (especially if that information would adversely affect the price), it logically follows that they, in providing a service to their clients, would have a fiduciary duty to share such information. Because the Ryans alleged a cause of action for breach of fiduciary duty against Defendants, at the very least, the lack of an expert witness would not be an impediment in proving such a cause of action based on the allegations in the complaint. For this reason alone, Defendants' motion for summary judgment should not have been granted.

Moreover, based on the undisputed facts before us, Defendants have not shown, for purposes of summary judgment, that an expert witness was necessary to establish the

13

scope of a broker's duty or a breach of that duty for a professional negligence claim. Here, Defendants possessed material information that impacted the value of the Property. They did not need to engage in any investigation to discover this information. They simply chose to remain silent, collect their commission, and allow the Ryans to deal with the consequences. In short, the conduct required by the circumstances presented here is within the common knowledge of a layman. (See *Flowers*, *supra*, 8 Cal.4th at p. 1001.) Put differently, anyone who hired a real estate broker to sell her home, would expect that broker to share information that would adversely impact the value of the home.

Defendants have not satisfied their initial burden showing that the causes of action lack merit because one or more elements of each cause of action cannot be established. (See § 437c, subd. (o); *Aguilar*, *supra*, 25 Cal.4th at p. 850.) The superior court thus erred in granting summary judgment below.

14

DISPOSITION

The judgment is reversed.  The matter is remanded to the superior court with directions to enter an order denying Defendants' motion for summary judgment.  The Ryans are entitled to their costs on appeal.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


GUERRERO, J.