Filed 7/9/14  Ponce v. Raymond Handling Solutions CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| GARY PONCE, | B246832 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. VC058495) |
| v. | |
| RAYMOND HANDLING SOLUTIONS, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Margaret Miller Bernal, Judge.  Reversed.

Young Wooldridge, Ned E. Dunphy for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Anthony E. Sonnett and Trevor J. Ingold for Defendants and Respondents.

INTRODUCTION

After he fell from a forklift, plaintiff Gary Ponce filed the instant products liability action against the machine's manufacturers, defendants Raymond Corporation and Raymond Handling Solutions, Inc. (Raymond), alleging that the handlebar he grabbed for balance broke away from the forklift's panel cover. Raymond successfully moved for summary judgment (Code Civ. Proc., § 437c)[1] on the grounds (1) plaintiff could not demonstrate a design defect in the forklift, and (2) defendants had a complete defense to the failure to warn cause of action because plaintiff was a sophisticated user. Plaintiff appealed and asks us to determine whether the competing expert declarations demonstrate a dispute of material fact. We conclude that Raymond failed to carry its burden in moving for summary judgment to demonstrate prima facie there was no defect and so the burden never shifted to plaintiff to oppose the motion. We conclude further, even had the burden shifted, that the trial court abused its discretion in sustaining the evidentiary objections to plaintiff's experts' declarations. Accordingly, we reverse the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

1. *The accident*

In April 2009, plaintiff, an operations supervisor at Slakey Brothers warehouse in Bakersfield California, drove a Raymond Model 5400 Orderpicker, also referred to as a forklift, through the warehouse to find a coworker. Orderpicker operators use the right hand to control a joystick-like throttle, the left hand to move the steering tiller, and the left foot to work the pedal. A small handlebar lies horizontally just above the steering tiller. Plaintiff testified he drove down an aisle and "slowed down a little bit. And then I felt I wasn't close enough. So I used the lever to go forward again. And once I used the lever to go forward, that thing just wobbled like crazy. I guess the order picker surged, and when it surged, it threw me off. And I went to grab the – [handle]bar, and that's

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

when the bar came off." Plaintiff fell back, hitting his head against a steel pole, and sustained head, neck, and back injuries. Until this point, there was nothing unusual about the way the forklift was operating.

Plaintiff's lawsuit against defendants ensued. Plaintiff sought damages on theories of general negligence and strict products liability in the design of the Raymond 5000 Series Orderpicker, breach of warranty, and failure to warn. Specifically, plaintiff's complaint alleged that when he grabbed the orderpicker's handlebar to regain his balance and prevent a fall, "[t]he plastic at the base of the grab handle failed, and the grab handle broke away from" the forklift causing him to fall backwards and strike a pole.

2. *Defendants' summary judgment motion*

Defendants moved for summary judgment on the grounds that the orderpicker was not defective in design and plaintiff lacked evidence to support his causes of action. Defendants argued although plaintiff contended the forklift was defective because the grab handle broke, plaintiff had no evidence that the breakage was the result of a defect.

In support of their motion, defendants submitted the declaration of their expert, Michael Rogers, an automotive engineer. In two pages, Rogers listed his considerable credentials and described his examination of the subject forklift. Rogers then devoted one paragraph to his opinion on the merits. He states: "5. Based on my examination of the subject forklift, my education, engineering experience, and experience and background in forklift design and manufacture, it is my opinion that the subject forklift is not defective in any respect. I did not observe any defect in the design, materials or workmanship of the subject forklift, nor did I observe any condition in the subject forklift that would constitute a manufacturing or design defect. Moreover, the subject forklift was designed and manufactured in conformity with all applicable safety and industry standards, and was observed by me to be in conformity with those standards.

3

Furthermore, there were no indications of any maintenance related problems with the subject forklift, and it operated as intended."[2]

With respect to plaintiff's cause of action for breach of the duty to warn, defendants cited various portions of plaintiff's deposition in which he stated that his job duties included operating the orderpicker and that Slakey Brothers trained him on its use. Plaintiff's training included reading a booklet, watching a video, and being observed by another employee while he operated the orderpicker. He testified that Slakey Brothers was "pretty good about training on their forklifts." Plaintiff estimated he logged "a couple hundred hours" on the orderpicker and others like it in the warehouse before his accident. Plaintiff also trained other Slakey Brothers employees on forklift operation.

As for the subject orderpicker, plaintiff testified that after it was delivered to Slakey Brothers' warehouse in 2005, a Raymond service technician "show[ed] us how the Raymond lift operated, and I remember them telling us to make sure you read the manual that was provided with the lift, and – and I just – back then I just remember a lot of training on the forklifts being provided, also, and – the forklifts and the Raymonds, but I – my recollection is just the Raymond guy showing us how to use the lift." Plaintiff also testified he read the entire manual, cover to cover, immediately after the orderpickers arrived at the warehouse and read the decals on the vehicles. The motion made no mention of what warnings the manual or decals made with reference to safety in general or to the handlebar in particular. Defendants asserted that plaintiff was "a sophisticated user of the subject forklift." For purposes of the motion for summary judgment, plaintiff did not dispute this.

---

[2] Defendants' motion also noted that plaintiff's earlier deposition in his workers' compensation proceeding, in which he claimed that he was *stopping* the forklift at the time of the accident, contradicted his deposition testimony in this case that he was *accelerating* at the time of the accident. In our view, and apparently that of the trial court, this difference is irrelevant because regardless of the vehicle's motion, the allegations of the complaint are that when he reached for the safety handlebar to steady himself, it broke off the forklift's plastic panel cover.

4

3. *Plaintiff's opposition*

In his opposition to the summary judgment motion, plaintiff argued defendants had failed to show the grab handle had no design or warning defect. He argued Rogers' declaration was legally insufficient as it presented broad legal conclusions without including the bases for those opinions. Plaintiff also argued that he had presented sufficient evidence of a defect in the safety handlebar through the declarations of his experts John Brault and Brad Wong to highlight a triable factual issue. Finally, plaintiff argued that he could establish a design defect through the consumer expectation test.

Plaintiff's expert Wong described his substantial credentials and experience. He then gave his opinion, based on his review of photographs, drawing plans, manuals, depositions, and his inspection of Raymond forklifts, that "[t]he subject handle system that failed while [plaintiff] was operating the forklift was defective in its design. The failure occurred when the handle separated from the panel cover." Wong went on to provide a detailed explanation of his conclusions. Although not a model of clarity, Wong's declaration explained that two bolts held the handle onto the plastic panel cover on the forklift itself. However there are no washers at the point where the bolts' heads come in contact with the plastic cover to "distribute the load over a greater surface area" and "reduce pressure on the plastic panel cover." The plastic panel cover cracks and breaks and separates from the bolts which remain mounted to the handle. Additionally, he explained that the "panel cover is two separate pieces joined together, effectively making the cover weaker than" if it were "one solid piece. This "increase[es] the likelihood of failure."

Wong also reported that this failure had occurred in a test Raymond conducted in 2007. That test involved one "horizontal pull" showing the failure of the handle with horizontal force. That test did not measure any real world condition involving expected and foreseeable use of the handle and panel cover over time, he declared. It was "foreseeable," Wong opined, that the handle would be subjected to vertical loading because an operator "would use it for support while pulling himself up onto the platform or using it for support while bending down," or "accelerating including any surging by

5

the forklift when the throttle is engaged." Based on the loads recorded for complete failure, Wong opined it was "most probable that the handle was compromised/broken prior to [plaintiff's] accident" because there was no indication that when plaintiff fell, he would have exerted even the forces determined in Raymond's 2007 single-pull test. When Wong inspected forklifts at the Slakey Brothers facility in Hayward, he found one with a handle completely broken off and not repaired, another with a broken and reaffixed handle, and another with signs of an initial crack on the panel to which the handle was affixed.

Wong also described the cost of repairs. When the handle separates completely from the cover on the vehicle's panel, the cover becomes cracked and broken. The handle cannot be remounted using the original bolting system and so the solution is to replace the forklift's entire panel cover, at a cost of $500. "The handle could have been mounted in other ways to prevent failure such as increasing the mounting contact surface area with larger washers or bracing to distribute the load at the point of connection/contact with the panel."

The declaration of plaintiff's experienced biomechanics expert, John Brault, explained the results of his biomechanical analysis of a Raymond Series 5400 orderpicker to assess the foreseeability that a user would grasp the horizontal grab handle just above the steering wheel after losing his balance in a backward direction. Brault opined that the normal reaction of a person standing on the vehicle who lost his balance and fell backward would be to raise his hands upward in front of his body to counteract the backward movement of his body to prevent a fall. The most immediate and graspable component on the user's left to prevent a backwards fall would be the horizontal grab-handle directly above the steering wheel. The handlebar appeared to have been designed and placed in this position for the stability of the user. The knob on the steering wheel was too small to be grabable or to maintain upright stability, Brault opined.

Defendants objected to vast portions of the Wong and Brault declarations on the grounds they were speculative, assumed facts not in evidence, lacked foundation, and

6

were irrelevant.  (Evid. Code, §§ 210, 350-351, 801 & 803.)  Defendants posited multiple grounds for almost every objection.

The trial court granted summary judgment.  It noted that plaintiff filed no written objections to the Rogers declaration.  The court found that Rogers' terse declaration that "the forklift was not defective in any respect" was "sufficient to shift the burden to plaintiffs."  (*Sic*.)  The court ruled that plaintiff failed to demonstrate a material dispute about whether there was a design defect.  In so ruling, the court sustained all of defendants' objections to Wong's and Brault's declarations.  The court stated:  "Plaintiff's experts' declarations are speculative and their opinions are based on facts not in evidence.  The opinions lack foundation and do not meet the standards of Vandermarck v. Ford Motor Co. [*sic*] (1964) 61 Cal.2d 256 or Hinckley v. La Mesa R.V. Center, Inc. (1984) 158 Cal.App.3d 630."  The court then provided a list of each evidentiary objection posed, and indicated each was "sustained."  Plaintiff's timely appeal followed.

## CONTENTIONS

Plaintiff contends the trial court erred in granting summary judgment because defendants' motion failed to shift the burden to plaintiff to oppose it, and the ruling sustaining defendants' objections to plaintiff's declarations was an abuse of discretion.

## DISCUSSION

### 1. *Standard of appellate review*

A defendant moving for summary judgment must show that one or more elements of the cause of action cannot be established, or that there is a complete defense.  (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 849 (*Aguilar*), quoting from § 437c, subd. (o)(2).)  More particularly, a moving defendant has an "initial burden of *production to make a prima facie showing* of the nonexistence of any triable issue of material fact."  (*Aguilar*, at p. 850, italics added; *Kerkeles v. City of San Jose* (2011) 199 Cal.App.4th 1001, 1009 (*Kerkeles*).)  "A prima facie showing is one that is sufficient to support the position of the party in question.  [Citation.]"  (*Aguilar*, *supra*, at p. 851.)  The moving defendant cannot merely assert the nonexistence of a triable factual issue; the defendant

7

must present *evidence* "that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at pp. 854 & 855, fn. 23; accord, *Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 808.)

" 'If the defendant fails to make this initial showing, it is *unnecessary* to examine the plaintiff's opposing evidence and the motion must be denied.' " (*Kerkeles*, *supra*, 199 Cal.App.4th at p. 1009, italics added.) "[I]f he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact" as to that cause of action or defense. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

We review the trial court's ruling on a motion for summary judgment de novo. (*Laclette v. Galindo* (2010) 184 Cal.App.4th 919, 926.) "We determine whether the court's ruling was correct, not its reasons or rationale. [Citation.] 'In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment.' [Citation.] We review for abuse of discretion any evidentiary ruling made in connection with the motion. [Citation.]" (*Shugart v. Regents of University of California* (2011) 199 Cal.App.4th 499, 504–505.)

2. *Defendants failed to meet their initial burden in moving for summary judgment to demonstrate prima facie the non-existence of a defect in the Orderpicker's handlebar.*

We note at the outset the basic rule in summary judgment that "[t]he pleadings identify the issues to be considered on a motion for summary judgment. [Citation.]" (*Wattenbarger v. Cincinnati Reds, Inc.* (1994) 28 Cal.App.4th 746, 750; accord, *City of South Lake Tahoe v. Superior Court* (1998) 62 Cal.App.4th 971, 975.) The moving defendant must address its motion to the claims as framed by the complaint or to establish a defense. (*Wattenbarger*, *supra*, at p. 750.) Plaintiff's complaint alleges that "[t]he plastic at the base of the grab handle failed, and the grab handle broke away from" the orderpicker. The complaint does not allege a defect in the orderpicker in general. To successfully move for summary judgment, defendants were obligated to address facts concerning the lack of defect in the *grab handle*. Defendants did not.

8

"A manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way." (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 560 (*Soule*).) Whether cast in negligence principles or manufacturer's strict liability (*Moreno v. Sayre* (1984) 162 Cal.App.3d 116, 124), defective design is established by one of two tests: "(1) the consumer expectations test, which asks whether the product performed as safely as an ordinary consumer would expect when used in an intended and reasonably foreseeable manner; or (2) the risk/benefit test, which asks whether the benefits of the challenged design outweigh the risk of danger inherent in the design," even if it otherwise satisfies ordinary consumer expectations. (*Saller v. Crown Cork & Seal Co., Inc.* (2010) 187 Cal.App.4th 1220, 1231-1232; *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 430 (*Barker*).)[3]

Plaintiff argues the consumer expectation test applies to his case. It is perhaps the appropriate test here because the handlebar, " 'in the context of the facts and circumstances of its failure, is one about which the ordinary consumers can form minimum safety expectations.' [Citation.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 426 (*Howard*).) However, defendants argued, and the trial court ruled, that the risk/benefit test applied because the design could not be evaluated based on "the everyday experience of [the] ordinary consumer." Even if the design of a safety handlebar is something an ordinary consumer could evaluate, defendants' motion and plaintiff's opposition addressed the design defect with expert opinion thus raising the factors of the risk/benefit test. (*Id.* at pp. 426-427.) We conclude under either test for a

---

[3] In granting the summary judgment motion, the trial court appears to have resolved the strict products liability cause of action on the basis of *causation.* The court stated that "Plaintiff admits he was already falling backward when he reached for the handle, thus the handle did not *cause* his injury." (Italics added.) Causation is ordinarily a question of fact. (*Johnson v. Prasad* (2014) 224 Cal.App.4th 74, 83.) Furthermore, defendants did not move for, and so plaintiff did not oppose, summary judgment on the ground there was no triable issue of fact with respect to causation and so the trial court's ruling deprived plaintiff of the opportunity to demonstrate a triable issue of material fact about causation.

9

product's defect, defendants failed to carry their burden in moving for summary judgment.

With the consumer expectations test, " 'if the product is one within the common experience of ordinary consumers,' " it is usually sufficient for the plaintiff to adduce evidence of " '(1) his or her use of the product; (2) the circumstances surrounding the injury; and (3) the objective features of the product which are relevant to an evaluation of its safety.' [Citation.] The test is that of a hypothetical reasonable consumer, not the expectation of the particular plaintiff in the case. [Citation.]" (*Saller v. Crown Cork & Seal Co., Inc.*, *supra*, 187 Cal.App.4th at pp. 1232-1233.) However, "if the expectations of the product's limited group of ordinary consumers are beyond the lay experience common to all jurors, expert testimony on the limited subject of what the product's actual consumers *do expect* may be proper." [Citation.]" (*Soule*, *supra*, at pp. 567-568, fn. 4.)

Here, defendants' summary judgment motion did not satisfy their burden of production to demonstrate prima facie that plaintiff lacked evidence of the objective features of the handlebar relevant to an evaluation of its safety or the expectations of a hypothetical reasonable consumer. Indeed, defendants' motion on this point relied on the *argument* that "there is no evidence to suggest that the fact that the handle broke was the result of a defect" in design. The only *evidence* defendants presented on this point was Rogers' declaration. Yet, Rogers never mentioned the handlebar, let alone the safety features of the bar.

Even if a product satisfies ordinary consumer expectations, it may be found to be defective if the design "embodies excessive preventable danger." (*Barker*, *supra*, 20 Cal.3d at p. 430.) In that case, the determination of the existence of a product's defect is based on the risk/benefit test, i.e., whether the risk of danger inherent in the grabhandle's design outweighs the benefits of that design. (*Ibid*.) This assessment requires the technical analysis of feasibility, cost, practicality, risk, benefit, " 'reasonable' safety expectations," and " 'clear guidelines,' " about whether "the product's design is an acceptable compromise of competing considerations." (*Howard*, *supra*, 203 Cal.App.4th at pp. 425 & 427.) When the risk/benefit test of a defect is applied, expert testimony is

10

necessary to assist the factfinder. (*Id.* at p. 426, quoting from *Soule*, *supra*, 8 Cal.4th at pp. 566-567.) On summary judgment, when the issue is the existence of a defect in the product's design under this test, the burden lies with the moving defendant to show prima facie, "*in light of the relevant factors*, that the product is not defective." (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 119, italics added.)

Evaluated against the factors of the risk/benefit test, Rogers' declaration is insufficient to shift the burden to plaintiff because he provided no discussion of the relevant factors. An expert's opinion must provide a reasoned explanation of why the underlying facts lead to the ultimate conclusion. Otherwise, the opinion " ' "has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based. [Citations.]" [Citation.]' [Citation.]" (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 530.) Thus, an opinion unsupported by reasons or explanations does not establish the absence of a material factual dispute for trial. (*Ibid.* [expert opinion that officers' use of deadly force was not justified or necessary, without describing facts on which conclusion was based, constituted improper opinion about ultimate issue]; *Kelley v. Trunk* (1998) 66 Cal.App.4th 519, 522 & 524-525 [moving party defendant doctor's expert declaration stating doctor " 'acted appropriately and within the standard of care under the circumstances' " was a laconic, insufficient opinion on ultimate issue]; *Golden Eagle Refinery Co. v. Associated Internat. Ins. Co.* (2001) 85 Cal.App.4th 1300, 1315, disapproved on other grounds in *State of California v. Allstate Ins. Co.* (2009) 45 Cal.4th 1008, 1036 [expert opinion that toxic spill was "sudden and accidental" was inadmissible to prove that fact as it lacked any basis, explanation, or reasoning].)

Rogers made the naked assertions that the orderpicker was not defective and that he was unable to find a defect. His declaration contained no discussion about the factual predicate or how the underlying facts lead to his conclusion, and it lacked any discussion of reasonable safety expectations for the handlebar to assist in applying clear guidelines for deciding whether the grab handle's design was an acceptable compromise of competing considerations. (See *Howard*, *supra*, 203 Cal.App.4th at p. 427 [experts

11

opined on the safety and adequacy of the product of a bathtub's anti-slip surface].) Rogers never addressed the safety and adequacy of the grab handle.

Nor does Rogers' unadorned statement that "the subject forklift was designed and manufactured in conformity with all applicable safety and industry standards" provide sufficient information to shift the burden to plaintiff on summary judgment. As noted, "[i]t is the allegations in the complaint to which the summary judgment motion must respond. [Citation.]" (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1258.) The material issue here is whether the handlebar, not the forklift in general, was designed according to industry standards. In any event, expert evidence about compliance with industry standards is not a complete defense on the issue of defective design, but rather one a factor to be considered in light of all other relevant factors and circumstances. (*Howard*, *supra*, 203 Cal.App.4th at p. 426.) Stated differently, Rogers' declaration constitutes an improper opinion on the ultimate issue in dispute. (See *Brown v. Ransweiler*, *supra*, 171 Cal.App.4th at p. 529 [adequate summary judgment declarations cite evidentiary facts, not legal conclusions or ultimate facts].) Rogers' declaration is therefore insufficient under the risk/benefit test to show prima facie the nonexistence of a defect in the grab handle so as to shift the burden to plaintiff to oppose defendants' summary judgment motion under either test.

We reach this conclusion notwithstanding plaintiff never posed evidentiary objections to Rogers' declaration. This is because, even when the entire declaration is considered, its substance is insufficient to shift the burden on summary judgment to plaintiff.

3. *Defendants failed to meet their initial burden in moving for summary adjudication with respect to plaintiff's failure to warn cause of action.*

Defendants also moved for summary adjudication on the ground they had a complete defense to plaintiff's cause of action based on a breach of the duty to warn. They asserted, and plaintiff has not disputed, that plaintiff was a "sophisticated user" of the orderpicker. Defendants argued that plaintiff was "therefore charged with knowledge

12

of the general dangers associated with the forklift and cannot claim that Defendants had an obligation to warn him of those dangers."

Strict and negligent products liability may be premised the failure to warn of dangers that were known or knowable at the time the product was manufactured and distributed.  (*Garrett v. Howmedica Osteonics Corp.* (2013) 214 Cal.App.4th 173, 182 (*Garrett*); *Johnson v. American Standard, Inc.* (2008) 43 Cal.4th 56, 64-65.)  "The sophisticated user defense exempts manufacturers from their typical obligation to provide product users with warnings about the products' potential hazards.  [Citation.]"  (*Johnson v. American Standard, Inc.*, *supra*, at p. 65.)  Where sophisticated users are already aware or should be aware about dangers, manufacturers need not provide warnings.

To determine whether there is a duty to warn, courts use the objective test and ascertain what is generally known or should have been known to the class of sophisticated users, not what the individual plaintiff subjectively knew.  (*Johnson v. American Standard, Inc.*, *supra*, 43 Cal.4th at p. 71.)  There is no dispute that plaintiff is a sophisticated user of the *orderpicker*, as he has admitted as much for purposes of the summary judgment motion.  Nor is there any dispute that plaintiff was trained in how to operate the *orderpicker*.  However, examining the pleadings which frame the issues to be addressed on summary judgment (*Wattenbarger v. Cincinnati Reds, Inc.*, *supra*, 28 Cal.App.4th at p. 750), plaintiff's complaint alleges that "[t]he plastic at the base of the grab handle failed, and the grab handle broke away from" the forklift.  Thus, in moving for summary judgment, defendants had the initial burden of production to make a prima facie showing of a complete defense that it warned plaintiff about or trained him on the use of the *handlebar* or other safety aspects.  Yet, absent from defendants' separate statement are any facts addressing what is generally known or should be known to the class of sophisticated users about the handlebar and the limits of its safety aspects or any

13

mention of safety warnings.  Summary adjudication of this cause of action was likewise erroneously granted.**4**

4. *The trial court abused its discretion in its rulings on defendants' objections to plaintiff's experts' declarations.*

Notwithstanding defendants failed to shift the burden on summary judgment to plaintiff, we address the trial court's evidentiary rulings with respect to plaintiff's two expert declarations lest the error repeat.  Trial courts' rulings on the admissibility of expert testimony are reviewed for abuse of discretion unless the ruling is based on the court's conclusion of law, in which case they are reviewed de novo.  (*Garrett*, *supra*, 214 Cal.App.4th at p. 187.)

As noted, the court rejected Wong and Brault's declarations on the ground they were "speculative," "based on facts not in evidence," "lack[ed] foundation," and did "not meet the standards of <u>Vandermarck v. Ford Motor Co</u>. [*sic*] (1964) 61 Cal.2d 256 or <u>Hinckley v. La Mesa R.V. Center, Inc</u>. (1984) 158 Cal.App.3d 630."  We conclude this ruling was an abuse of discretion.

---

**4**      The trial court ruled that the apparatus on the forklift designed for arresting falls was a belt and tether system which plaintiff was not wearing at the time of his accident.  Yet, the court then observed that the practice was to use the tether system only when raising the picker two feet or more above the floor.  For this evidence, the court relied on plaintiff's deposition testimony.  However, *defendants made no mention of the belt and tether system in their separate statement.*  " 'This is the Golden Rule of Summary Adjudication: *if it is not set forth in the separate statement, it does not exist.*  Both the court and the opposing party are entitled to have all the facts upon which the moving party bases its motion plainly set forth *in the separate statement.*' [Citations.]" (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 337, first italics added, superseded by statute on another point as stated in *Certain Underwriters at Lloyd's of London v. Superior Court* (1997) 56 Cal.App.4th 952, 957, fn. 4.)  Although the court has discretion to consider evidence not mentioned in the separate statement, it must also bear in mind the due process implication of doing so. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315-316.)  Here, the separate statement contained no mention of any safety apparatus, let alone the parameters for its use.  Thus, the trial court abused its discretion in considering that evidence because it denied plaintiff the opportunity to respond.

14

The trial court acts as a gatekeeper to exclude, pursuant to Evidence Code sections 801, subdivision (b) and 802,[5] expert opinion testimony that is based on (1) matter of a type on which an expert may not reasonably rely, (2) reasons unsupported by the material on which the expert relies, or (3) speculation. (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772 (*Sargon*).)

Evidence Code section 801 reads, "If a witness is testifying as an expert, his testimony in the form of an opinion is limited to such an opinion as is: [¶] (a) Related to a subject that is sufficiently beyond common experience that the opinion of an expert would assist the trier of fact; and [¶] (b) Based on matter . . . perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion."

Subdivision (b) of Evidence Code section 801 means " 'that the matter relied on must provide a reasonable basis for the particular opinion offered, and that an expert opinion based on speculation or conjecture is inadmissible.' " (*Sargon*, *supra*, 55 Cal.4th at p. 770.) However, the Supreme Court cautioned, "Courts must not be too quick to exclude expert evidence as speculative merely because the expert cannot say with absolute certainty . . . . Courts must not . . . too broadly defin[e] what is too speculative. A reasonable certainty only is required, not absolute certainty." (*Id*. at p. 775.) Although this admonition concerned testimony about lost profits, we think the advice applies to any expert testimony challenged as speculative.

---

[5] Evidence Code section 802 reads, "A witness testifying in the form of an opinion may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion. The court in its discretion may require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based."

Thus, "[a]n expert's opinions and conclusions must have reasonable bases and reflect more than speculation or conjecture. [Citation.] It is not proper for an expert to base opinions on assumptions that are not supported by the record, or on information that would not be reasonably relied upon by other experts. [Citation.]" (*Howard*, *supra*, 203 Cal.App.4th at p. 427.)

Relying on *Sargon*, we held in *Garrett*, *supra*, 214 Cal.App.4th 173, that the failure of the expert for the opposing party to "describe the particular testing processes that he used to arrive at his conclusions regarding the hardness of the prosthesis," his "failure to more particularly describe the results of that testing," and his "failure to identify the particular ASTM specifications that he considered," "do not in any manner indicate that his conclusions are speculative, conjectural or lack a reasonable basis." (*Id.* at pp. 187-188.) We explained, the trial court must liberally construe the evidence submitted in *opposition* to a summary judgment motion both with respect to the admissibility of expert testimony and to the sufficiency of the declaration to create a triable issue of fact. (*Id.* at p. 189.) In view of that rule, we held, "a reasoned explanation required in an expert declaration filed in opposition to a summary judgment motion need not be as detailed or extensive as that required in expert testimony presented in support of a summary judgment motion or at trial." (*Ibid.*)

With these rules in mind, we conclude both Wong's and Brault's declarations provided sufficient foundation, were relevant, and were not speculative.[6] Both experts inspected Raymond orderpickers and described the vehicle's operation in detail. Both described other materials on which they based their conclusions, including deposition transcripts, Raymond orderpickers photographs, drawing plans, and manuals. In 13 paragraphs with reference to supporting exhibits, Wong detailed how the panel cover is made of two separate pieces joined together which makes the cover weaker than if it were made of one piece. There are no washers at the point where the bolts' heads come in contact with the plastic cover to "distribute the load over a greater surface area" and

---

[6]     Defendants posed no evidentiary objection to the experts' qualifications.

16

"reduce pressure on the plastic panel cover." The plastic panel cover breaks and separates from the bolts which remained in the handlebar. He opined that the handlebar could have been mounted in a manner to prevent failure by increasing the mounting contact surface area with larger washers or bracing it to distribute the load at the point of contact with the panel cover. He described Raymond's 2007 single horizontal test of the grab handle and explained why it was foreseeable that an operator would also pull vertically on the handle. Wong then described the results of his inspection of damage to other Raymond forklifts at Slakey Brothers and concluded that the cost to repair the problem was $500, whereas larger washers or bracing would prevent failure. For his part, Brault described, based on his expertise, the biomechanics of a backwards fall and that the most immediate, graspable component to prevent a fall was the horizontal grab handle, because the orderpicker's steering wheel was not large enough to grab onto to break a fall. These declarations are sufficient, defendants' contention to the contrary notwithstanding, because they rely on matters that are the type on which experts may reasonably rely, and explain how the opinions are supported by the material on which the experts relied, and are not speculative. As we observed in *Garrett*, these declarations are not speculative or lack a reasonable foundation merely because the experts omitted to describe the results of testing or the specifications considered. (*Garrett*, *supra*, 214 Cal.App.4th at p. 189.) The trial court abused its discretion in sustaining defendants' evidentiary objections.

The trial court also ruled enigmatically that Wong's and Brault's opinions failed to meet the standards of *Vandermark v. Ford Motor Co.*, *supra*, 61 Cal.2d 256 and *Hinckley v. La Mesa R.V. Center, Inc.*, *supra*, 158 Cal.App.3d 630, and observed that "[m]erely because an accident has occurred, there is no presumption of a defect or negligence." Both *Vandermark* and *Hinckley* concerned testimony at trial about the defects in vehicles where the damage was so extensive that direct determination of the defect was impossible. (*Vandermark*, *supra*, at p. 260; *Hinckley*, *supra*, at pp. 636 & 643.) *Hinckley* quoted from Prosser that " 'The mere fact of an accident, standing alone, as where an automobile goes into the ditch, does not make out a case that the product was defective,

17

nor does the fact that it was found in a defective condition after the event, where it appears equally likely that it was caused by the accident itself. *But the addition of other facts tending to show that the defect existed before the accident*, such as *its occurrence within a short time after sale*, or *proof of the malfunction of a part for which the manufacturer alone could be responsible, may make out a sufficient case, and so may expert testimony*.' " (*Hinckley*, *supra*, at p. 643, first & last italics added, quoting from Prosser, Torts (4th ed. 1971) § 103, p. 673.)

Obviously, the trial court here was correct that the mere fact of an accident alone is insufficient to raise a triable issue of fact that the orderpicker was defective in design. Yet, plaintiff did not rely on the mere fact of his accident to establish the presence of a defect. As Brault and Wong explained, plaintiff was injured because the plastic panel cover and safety handlebar broke when he grabbed the handlebar to steady his balance. Wong opined the handle broke because of a defect in its design, namely that it was fastened to a two-piece plastic panel cover and lacked washers needed to distribute forces encountered under reasonably foreseeable conditions of use. Plaintiff's declarations demonstrate a malfunction of a part for which the manufacturer alone might be responsible. We take no position about whether these declarations would be sufficient if adduced at trial, or whether they demonstrate a malfunction for which Raymond *alone* would be responsible. Although they are inartfully worded, plaintiffs' declarations are sufficiently detailed and extensive to demonstrate the existence of dispute of material fact in opposition to the showing defendants made in their summary judgment motion.

To summarize, defendants failed to carry their burden in moving for summary judgment to shift the burden to plaintiff to demonstrate a triable issue of material fact. The trial court abused its discretion in sustaining the objections to plaintiff's expert declarations in opposition to defendants' motion. Summary judgment was improperly granted.

DISPOSITION

The judgment is reversed.  Costs are awarded to appellant.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ALDRICH, J.

We concur:

KLEIN, P. J.

KITCHING, J.

19