Filed 7/22/14  Tam v. Garfield Medical Center CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MEI TAM,<br><br>     Plaintiff and Appellant,<br><br>v.<br><br>GARFIELD MEDICAL CENTER, INC.<br>et al.,<br><br>     Defendants and Respondents. | B246993<br><br>(Los Angeles County<br>Super. Ct. No. BC467038) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jan A. Pluim, Judge.  Affirmed.

Law Offices of David S. Lin, David S. Lin and Maximilian Lee for Plaintiff and Appellant.

Dummit, Buchholz & Trapp and Kevin S. Tanaka for Defendants and Respondents.

_____

# INTRODUCTION

In this medical malpractice action arising out of the death of her father, plaintiff Mei Tam (Tam) appeals from the judgment entered after the trial court granted a motion by defendant Garfield Medical Center, Inc. (Garfield) for summary judgment. Tam contends that Garfield did not meet its initial burden on summary judgment because, although Garfield addressed the primary theory of liability alleged in the complaint, Garfield's motion did not attack Tam's alternative theory of liability. We agree with Garfield that because Tam's complaint did not allege or reasonably contemplate this alternative theory of liability, Garfield did not have the burden of addressing this theory in its motion. Therefore, we affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A.      *The Allegations in the Complaint*

Hung Sun Tam (Mr. Tam) was in a car accident and suffered injuries to his abdomen and shoulder. The emergency room physicians who treated him for his injuries at Garfield diagnosed him with peritonitis, hypotension, and fluid in the abdomen. Prior to emergency surgery he was stable, alert, and able to communicate with his daughter, Tam. While under the care of Dr. Jimmy Yue and Garfield nurses, Mr. Tam "was given a dose of Morphine which caused his blood pressure to immediately drop and put [him] into a cardiac respiratory arrest. Mr. Tam then went unconscious, was intubated in the ER and sent to the OR with directions to resuscitate. Notwithstanding such actions, Mr. Tam lapsed into a coma and was in a comatose state and condition at the time he underwent surgery . . . ." After the surgery, the doctors transferred Mr. Tam to the intensive care unit, where a "pulmonary consultation revealed that Mr. Tam was in a deep coma" and he "died shortly thereafter, on the same day he was admitted . . . ."

Tam asserted causes of action against Garfield and Dr. Yue for wrongful death and medical malpractice. Tam alleged that "it is believed that once [Mr.] Tam was

2

administered an injection of morphine, under the directions of the attending physician, [Dr. Yue], and through the assistance of medical personnel at [Garfield], i.e., attending nurses caring for Mr. Tam, [Mr.] Tam immediately lapsed into a medical code blue, underwent an immediate cardiac respiratory arrest, losing consciousness and lapsing into a coma.  As such, as a direct and immediate consequence of the negligent medical treatment administered through the medical care, guidance and directives of [Dr. Yue] and those medical personnel and hospital staff, i.e., attending nurses, at [Garfield], Mr. Tam went into a coma and died shortly after his surgery."  Tam alleged that her father died as "a direct consequence" of the failure by Garfield and Dr. Yue "to provide adequate medical diagnosis, treatment, and healthcare in a non-negligent fashion and in accordance with the reasonable standards of care within the health profession . . . ."

Thus, the complaint framed the professional negligence issue as one involving the administration of morphine to Mr. Tam.  Although some of the general allegations left open the possibility of other bases for the negligence claims, giving Mr. Tam morphine was the only allegation of negligence in the complaint.  Discovery, of course, could disclose other bases.

B.    *The Facts in the Discovery Responses*

Discovery, however, did not reveal any potential bases of negligence other than the administration of the morphine.  In response to Garfield's special interrogatory asking Tam to "state all specific acts or omissions which you contend were negligent or otherwise [tortious]," Tam identified only the decision by Garfield and Dr. Yue to give Mr. Tam morphine.  (Underscoring omitted.)  Tam stated in her verified response: "Sometime prior to [Mr. Tam] entering into his emergency operative surgery to address his medical injury," he "was given a dose of Morphine which caused his blood pressure to immediately drop and put Mr. Tam into a cardiac respiratory arrest.  Therefore, . . . Mr. Tam fell unconscious, was intubated in the ER and sent to the OR with directions to attempt to resuscitate."  Tam further stated in response to this interrogatory:  "Upon information and belief, it is believed that once [Mr. Tam] was administered with an

3

injection of Morphine," he "immediately lapsed into a medical code blue, underwent an immediate cardiac respiratory arrest, lost consciousness and lapsed into a coma. . . . Responding party further contend[s] that [Garfield and Dr. Yue] acted negligently and committed medical malpractice in failing to use reasonable care in the caring of the medical patient, Mr. Tam[,] in failing to also ensure the adequacy and propriety of the medical care and treatment rendered and administered to him as well as to ensure the competence of its medical . . . staff . . . in administering such medical treatment to its patients."

### C.    *The Motion for Summary Judgment*

Garfield filed a motion for summary judgment, arguing, among other things, that there was no breach of the standard of care and no causal connection between any act or omission by the nursing staff and Mr. Tam's death.  Garfield submitted the declarations of two experts, Lorna Lord, a registered nurse, and Dr. David Cossman, a vascular surgeon.  Both declarations were directed to the only specific issue raised by the complaint and mentioned in Tam's interrogatory responses: the decision to give Mr. Tam morphine.

Lord stated her opinion that the members of the nursing staff at Garfield were not negligent.  Lord explained that the nurses "fulfilled their duty by timely and appropriately evaluating the patient, timely and accurately complying with physician[s'] orders (including the order for the administration of Morphine, which was timely complied with and in strict accordance with the blood pressure parameters of the order), and keeping the involved physicians informed of all changes in the condition of [Mr. Tam] (including calling a Code Blue on two occasions and informing physicians of status changes throughout the admission)."

Dr. Cossman stated that Mr. Tam died because of the injuries he sustained in the car accident, not from the receipt of morphine.  He explained that Mr. Tam's "hemodynamic instability that resulted in the first Code Blue was caused by his intra-abdominal injuries and fluid and blood loss, and was not caused by the administration of

4

Morphine at 1417. Morphine, or similar[] analgesics, always have the potential to lower blood pressure, so the use of such medications in patients with severe pain due to multiple trauma always requires vigilance and judgment. Hemodynamic parameters are established to hold medications such as Morphine to minimize the risk of associated hypotension. When Morphine was administered to [Mr. Tam], his blood pressure was 148/94, which is substantially higher than the minimum blood pressure level below which Morphine is not administered. When [Mr. Tam] first experienced hemodynamic collapse, he had one-third of his blood volume in his abdominal cavity, and he had additional loss of liters of intracellular and extracellular fluid associated with his bowel and mesenteric injuries. Ultimately, it was these injuries, with the attendant blood and fluid loss, that caused his hemodynamic shock, and not the administration of Morphine. When Morphine induces hypotension, it is easily counteracted by the administration of fluid. When hypotension is caused by ongoing hypovolemia due to severe intra-abdominal trauma (as here), there is a cascade of disruption in homeostatic mechanisms that are either not easily reversible by volume replacement or not reversible at all. . . ." Dr. Cossman added that "the administration of Morphine to [Mr. Tam] at 1417 did not in any way cause, contribute to, or serve as a substantial factor in causing[] [Mr. Tam's] death."

Finally, Garfield argued that it could not be liable under an ostensible agency theory because Dr. Yue was Mr. Tam's personal physician. Garfield argued that Tam's medical malpractice claim failed because there was no physician-patient relationship between Garfield and Tam.

In opposition to Garfield's motion for summary judgment, Tam did not submit any evidence regarding the propriety of giving her father morphine, nor did Tam even argue that there were any triable issues of material fact on that issue. Instead, Tam submitted the declaration of Dr. Paul Bronston, a surgeon and emergency physician, who, after reviewing the medical records of Mr. Tam's treatment at Garfield, gave an opinion regarding the amount of time it took for Garfield doctors to begin the emergency operation. Dr. Bronston stated that there were "approximately 2 hours and 45 minutes

5

from the time of [Mr. Tam's] presentation to the Emergency department" to the time he "was sent to the operating room for an emergency laparotomy," and that "[p]er the standard of care the patient needed immediate and timely medical attention via surgery than was given and undertaken by [Garfield] to properly address this potentially life-threatening condition . . . ." Dr. Bronston concluded: "Consequently, it is my medical expert opinion that [Garfield] and those treating physicians, may have acted negligently and below the standard of care within the medical profession in failing to undertake a more timely surgical operation to address the emergency medical issues of [Mr.] Tam in this case, which if performed in a more timely fashion might have potentially saved [his] life."

Based on this declaration, Tam argued that Garfield's motion was "wholly deficient," "completely 'miss[ed] the boat,'" and did not even address "the most critical and important of the issues levied against [Garfield] in this case, namely, arising from its deficient, untimely, negligent medical care, . . . especially as it concerns the timely nature of the surgical operation . . . ." (Underscoring omitted.) Tam argued that instead of taking Mr. Tam into surgery immediately, Garfield "wait[ed] in excess of over 3 hours time, (in part due to the unavailability of the surgical doctor who was supposed to be on call and on duty) until such surgical operation was, in fact, finally undertaken by a different non-on call surgeon . . . ." (Underscoring omitted.) Tam asserted that Garfield "completely fail[ed] to address [Tam's] additional allegations" of negligence due to the delay in surgery and "the unavailability of the ER doctor who should have been present to perform the surgery but was not."

On reply, Garfield asked rhetorically, "what 'additional allegations'"? Garfield explained that Tam, in her allegations, written discovery responses, and deposition testimony, had "always maintained that [Mr. Tam's] death was due to the allegedly improper administration of Morphine," and that Tam never alleged or stated in response to discovery that there was a "delay in surgery." Garfield complained that, "either out of a deceitful attempt to surprise [Garfield] in order to get past summary judgment, or out of a realization that her theory has been faulty all along, [Tam] has sprung a brand new

6

theory upon [Garfield] and the Court, contradicting her Complaint, her written discovery responses, and her deposition testimony." Garfield also filed evidentiary objections to Dr. Bronson's declaration, arguing that his opinions were inadmissible because they lacked foundation under *Garibay v. Hemmat* (2008) 161 Cal.App.4th 735 and *Kelley v. Trunk* (1998) 66 Cal.App.4th 519.

The trial court granted the motion, ruling that Garfield "presented evidence establishing that the nursing and other staff of the Hospital complied with the standard of care, and that no negligent act or omission of the Hospital was a substantial factor in bringing about [Mr. Tam's] death. Furthermore, regarding the Ostensible Agency allegations, the Court finds that [Garfield] presented evidence establishing that it was not the ostensible principal of [Mr. Tam's] treating physician, pursuant to *Mejia v. Community Hospital of San Bernardino* (2002) 99 Cal.App.4th 1448." The court also found that the medical malpractice claim was barred because Tam "did not sue pursuant to" Code of Civil Procedure section 377.30. Finally, the court sustained Garfield's objections to Dr. Bronston's declaration.[1]

## DISCUSSION

### A.     *Standard of Review*

"'On appeal after a motion for summary judgment has been granted, we review the record de novo, considering all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained. [Citation.]' [Citation.] A motion for summary judgment is properly granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citation.]" (*Biancalana v. T.D.*

---

[1]     The trial court's order granting Garfield's motion for summary judgment is not in the record. The trial court's judgment and the parties' "agreed statement to appellant's notice designating record on appeal" describe the trial court's order.

*Service Co.* (2013) 56 Cal.4th 807, 813.) "'"A defendant moving for summary judgment has the burden of producing evidence showing that one or more elements of the plaintiff's cause of action cannot be established, or that there is a complete defense to that cause of action. [Citations.] The burden then shifts to the plaintiff to produce specific facts showing a triable issue as to the cause of action or the defense. [Citations.] Despite the shifting burdens of production, the defendant, as the moving party, always bears the ultimate burden of persuasion as to whether summary judgment is warranted. [Citation.]" [Citation.]' [Citation.]" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1443.) "Appellate courts (1) take the facts from the record that was before the superior court when it ruled on the motion; (2) consider all the evidence set forth in the moving and opposing papers, unless the superior court sustained objections to that evidence; and (3) resolve doubts concerning the evidence in favor of the party opposing the motion. [Citation.]" (*Robinson v. City of Chowchilla* (2011) 202 Cal.App.4th 368, 374.)

B. *The Trial Court Properly Granted Garfield's Motion for Summary Judgment*

Tam does not argue that Garfield failed to meet its initial burden on summary judgment on Tam's claim that Garfield negligently administered morphine to Mr. Tam.**2** Instead, Tam argues that Garfield did not meet its initial burden on summary judgment of showing it was entitled to judgment as a matter of law on all of the theories in the complaint. Specifically, Tam argues that Garfield did not present any argument or

---

**2** Although Tam did not file evidentiary objections to the declaration of Dr. Cossman pursuant to California Rules of Court, rule 3.1352, Tam argued in her memorandum of points and authorities in opposition to the motion for summary judgment that Dr. Cossman's opinion was inadmissible because it was unsupported by reasons and explanations, as required by *Kelley v. Trunk*, *supra*, 66 Cal.App.4th 519. Dr. Cossman's opinions, however, that the administration of the morphine was not a breach of the standard of care, and that it was the injuries Mr. Tam suffered in the car accident, and not the administration of morphine, that caused Mr. Tam's death, were supported by reasoned explanations.

8

evidence to negate her claim that Garfield was negligent "in unduly and unnecessarily delaying providing proper and timely medical care and treatment to [Mr. Tam] for a time period of approximately three hours after his initial admission into [Garfield's] Emergency Room." (Bold and underscoring omitted.) Tam argues that Garfield "had the initial burden to show that . . . Tam's entire Action, including all claims for any and all theories of medical negligence, i.e., delay in rendering proper and timely medical treatment to [Mr. Tam], had absolutely no merit whatsoever, instead of providing evidence seeking to preclude and disprove only a single theory of medical negligence in the case based on the negligent administration of the Morphine injection to [Mr. Tam], while remaining silent as to all other plausible theories of potential liability that could have been reasonably contemplated by the operative pleadings." (Bold and underscoring omitted.)

Thus, the issue on appeal is whether the operative pleading reasonably contemplated any other theories of potential liability, or, more specifically, whether the complaint reasonably contemplated a negligence theory based on Garfield's delay in getting Mr. Tam to surgery. Tam asserts that the complaint "reasonably contemplated" the theory that "the unwarranted and negligent delay in performing the necessary required . . . surgery . . . very likely substantially contributed to, if not directly caused, [Mr. Tam's] resultant death in this case." Garfield argues that the complaint did not reasonably contemplate a delay of surgery theory, and that, "[s]hort of mind reading," Garfield had no way to know about such a theory.

The pleadings play a key role in a summary judgment motion and ""''"set the boundaries of the issues to be resolved at summary judgment."''' (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 289.) "[T]he scope of the issues to be properly addressed in [a] summary judgment motion" is generally "limited to the claims framed by the pleadings. [Citation.] A moving party seeking summary judgment or adjudication is not required to go beyond the allegations of the pleading, with respect to new theories that could have been pled, but for which no motion to amend or supplement the pleading was brought, prior to the hearing on the dispositive motion.

9

[Citation.]" (*Howard v. Omni Hotels Management Corp.* (2012) 203 Cal.App.4th 403, 421.) "The test is whether such a particular theory or defense is one that the opposing party could have reasonably anticipated would be pursued, and whether a request for leave to amend accordingly would likely have been granted . . . . [Citation.]" (*Id.* at p. 422.) "Moving defendants have 'the burden on summary judgment of negating only those "'theories of liability *as alleged in the complaint*'" and [are] not obliged to "'""refute liability on some theoretical possibility not included in the pleadings,'"'" simply because such a claim was raised in plaintiff's declaration in opposition to the motion for summary judgment. [Citation.]' [Citation.] Declarations in opposition to a motion for summary judgment are not a substitute for amending the pleadings to raise additional theories of liability. [Citation.] '[S]ummary judgment cannot be *denied* on a ground not raised by the pleadings. [Citations.]' [Citation.]" (*Nativi v. Deutsche Bank National Trust Co.*, *supra*, 223 Cal.App.4th at p. 290; see *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 ["[a] party may not oppose a summary judgment motion based on a claim, theory, or defense that is not alleged in the pleadings," and "[e]vidence offered on an unpleaded claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"]; *Comunidad en Accion v. Los Angeles City Council* (2013) 219 Cal.App.4th 1116, 1125 ["'"[a] party cannot successfully resist summary judgment on a theory not pleaded"'"].)

A fair reading of the allegations in the complaint does not suggest a medical negligence claim based on delay of surgery, as opposed to or in addition to the administration of morphine. A defendant (or a court) reading the complaint would not reasonably anticipate such a claim and, therefore, would not have noticed that a motion for summary judgment would need to address such a claim. The allegedly improper administration of morphine is the only theory stated in the complaint. There are additional general allegations of "failure to provide adequate medical diagnosis, treatment, and healthcare in a non-negligent fashion and in accordance with the reasonable standards of care within the health profession," and there are allegations of the "direct consequence" of the negligence, but the only mention of negligence is the

10

administration of morphine. There is no mention, suggestion, or any facts alleged that would put a reasonable defendant on notice that Tam was claiming Garfield was negligent in delaying the surgery. Garfield's motion for summary judgment did not need to address a delay in surgery claim. (See *Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 499 ["[d]efendant . . . met its burden as the moving party when it negated the sole basis of plaintiff's claims," and "[i]t was not incumbent on defendant to refute liability on some theoretical possibilities not included in the pleadings"]; accord, *Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1254.)[3]

Moreover, Tam did not request or attempt to amend her complaint, even after Garfield served its motion for summary judgment, to allege that her medical negligence cause of action was based on a claim that Garfield delayed the surgery. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1186 ["'[i]f the opposing party's evidence would show some factual assertion, legal theory, defense or claim not yet pleaded, that party should seek leave to amend the pleadings before the hearing on the summary judgment motion'"]; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663-1664 ["[i]f either party wishes the trial court to consider a previously unpleaded issue in connection with a motion for summary judgment, it may request leave to amend"].) Tam could have sought to amend her pleadings, and her failure to do so precluded her from defeating Garfield's motion for summary judgment on her new

---

[3]     The evidence submitted by Tam was not only irrelevant, it did not create a triable issue of fact on the (unpleaded) issue of whether Garfield was negligent in delaying the surgery. Dr. Bronston stated in his declaration that Garfield "may have acted negligently and below the standard of care within the medical profession in failing to undertake a more timely surgical operation . . . ." Expert testimony about what "may have" breached the standard of care and caused the plaintiff's injuries does not defeat a motion for summary judgment. (See *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 976, fn. 11 [in medical malpractice cases, causation standard is "'reasonable medical probability based upon competent expert testimony'"]; *Jameson v. Desta* (2013) 215 Cal.App.4th 1144, 1166 ["'"[t]he law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony"'"].)

11

theory. (See *Howard v. Omni Hotels Management Corp.*, *supra*, 203 Cal.App.4th at p. 420 ["[i]t is not appropriate, at that time [of filing the opposition], to raise new legal theories or claims not yet pleaded, if there has been no request for leave to amend accordingly, prior to the summary judgment proceedings"]; *Government Employees Ins. Co. v. Superior Court* (2000) 79 Cal.App.4th 95, 98, fn. 4 [noting that the plaintiff, in opposition to a motion for summary judgment, "did not seek leave to amend her complaint to expand her claims, although she might properly have done so"]; but see *Van v. Target Corp.* (2007) 155 Cal.App.4th 1375, 1387, fn. 2 [amendments filed after the filing of a motion for summary judgment that do "not cure a legally insufficient complaint, but rather, would state a different theory of recovery" are "impermissible"].)[4]

If Tam's complaint left any doubt that her claims were based on the administration of morphine, and not a delay in the surgery, her interrogatory responses removed that doubt. (See *Burke v. Superior Court* (1969) 71 Cal.2d 276, 281 [interrogatories "used to clarify the contentions of the parties . . . are an adjunct to the pleadings" and should be used liberally "for the purpose of clarifying and narrowing the issues made by the pleadings"]; *Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 640 ["[i]nterrogatories . . . may be used in support of a motion for summary judgment"]; see also Code Civ. Proc., § 437c, subd. (b)(1) [authorizing use of interrogatory answers to support a motion for summary judgment].) Like her complaint, Tam's response to Garfield's contention interrogatories made no mention of a delay in surgery theory, and mentioned only the administration of morphine theory. And, just as she did not seek to

---

**4** Tam argues that she "should have been properly allowed leave to amend her Complaint to more explicitly state her additional theory . . . in regards to the delayed medical care and treatment rendered to [Mr. Tam], as an additional cause of his resultant death . . . ." As noted, however, Tam never sought leave to amend her complaint to add or state "more explicitly" a delay in surgery theory. (See *Conroy v. Regents of University of California*, *supra*, 45 Cal.4th at p. 1254 ["[i]f the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, as opposed to merely attacking the sufficiency of the complaint, the plaintiff forfeits an opportunity to amend to state new claims by failing to request it"].)

12

amend her complaint, Tam never served amended interrogatory responses stating facts in support of a delay in surgery theory, nor did she request a continuance of the hearing on the motion pursuant to section 437c, subdivision (h), to take any additional discovery on such a claim. From September 24, 2012, when Garfield filed its motion for summary judgment, to November 28, 2012, when Tam filed her opposition, to December 13, 2012, when the trial court heard the motion, Tam never availed herself of any of the procedural opportunities available to bring a negligence claim based on delay of the surgery into the case.

Citing *AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, Tam argues that Garfield had the burden on summary judgment to "show that there exists no factual basis for relief on any theory reasonably contemplated by [Tam's] pleading." (Bold and underscoring omitted.) The section of the court's opinion in *AARTS Productions* relied on by Tam, however, actually supports Garfield: "[W]e identify the issues framed by the pleadings since it is these allegations to which the motion must respond by establishing a complete defense or otherwise showing there is no factual basis for relief *on any theory reasonably contemplated by the opponent's pleading*." (*AARTS Productions, Inc.*, *supra*, at p. 1064, italics added; accord, *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35, 41-42.) As explained, Tam's complaint did not reasonably contemplate a theory that Garfield was negligent in treating Mr. Tam by delaying his surgery.

*Canifax v. Hercules Powder Co.* (1965) 237 Cal.App.2d 44, also cited by Tam, is distinguishable. The court in *Canifax* stated the general principle that "a plaintiff who has pleaded a cause of action on either of two theories will not be subject to defeat by summary judgment because the defendant has established by an uncontradicted affidavit that *one* of the two theories (but not necessarily the other) cannot be established." (*Id.* at p. 50.) In *Canifax*, the plaintiffs alleged causes of action for products liability and negligence in connection with a fuse that the plaintiffs claimed burned too fast and caused an explosion of dynamite in a tunnel where the plaintiffs were working. (*Id.* at pp. 47, 50.) The complaint alleged two theories: (1) strict products liability based on the

13

defendant's manufacture, sale, or supply of the fuse, and (2) negligence based on the defendant's failure to give adequate warnings about the timing of the fuse. (*Id.* at p. 47.) The defendant's motion for summary judgment included evidence that the defendant accepted an order for "dynamite, fuse and blasting supplies" and forwarded the order to the manufacturer, but that the defendant did not manufacture or ever possess the products. (*Id.* at pp. 48, 50.) The court held that the defendant had not met its moving burden on summary judgment because the motion did not address the products liability theory.

Here, Tam's complaint, like the complaint in *Canifax*, asserted two causes of action: wrongful death and medical malpractice. Unlike the complaint in *Canifax*, Tam's complaint alleged only one theory: the administration of morphine. As Garfield states, in distinguishing *Canifax* from this case, in Tam's complaint "there isn't a single mention of the timing of surgery theory."

Tam correctly argues that, in order to state a cause of action, a complaint may allege negligence in general terms. The issue here, however, is not whether Tam stated causes of actions (Garfield did not demur to the complaint), but whether she can defeat Garfield's motion for summary judgment by relying on a theory that did not appear in her causes of action. Moreover, even at the pleadings stage, when a plaintiff claims medical malpractice, "[t]here are, of course, limits to the generality with which a plaintiff is permitted to state his cause of action, and it is ordinarily said that while negligence may be pleaded in general terms, the plaintiff must indicate the acts or omissions which are said to have been negligently performed." (*Guilliams v. Hollywood Hospital* (1941) 18 Cal.2d 97, 101; accord, *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 60; *Berkley v. Dowds* (2007) 152 Cal.App.4th 518, 527.) The only act or omission Tam alleged Garfield negligently performed was the administration of morphine.

## DISPOSITION

The judgment is affirmed.  Garfield is to recover its costs on appeal.


SEGAL, J.*


We concur:


PERLUSS, P. J.


ZELON, J.

---

*        Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

15