Filed 9/24/24  WVS SPE LLC v. Azinian CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| WVS SPE LLC,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROBERT AZINIAN et al.,<br><br>    Defendants and Appellants. | B326132<br><br>(Los Angeles County<br> Super. Ct. No. 19STCV33849) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Eric Everett Haws for Defendant and Appellant Robert Azinian.

Miller & Tong and Daron D. Tong for Defendant and Appellant Lloyd Sugarman.

Hamburg Karic and Steven S. Karic for Plaintiff and Respondent.

# INTRODUCTION

Appellants Robert Azinian (Azinian) and Lloyd Sugarman (Sugarman) guaranteed a commercial lease. The tenant defaulted twice, and was evicted; the landlord, respondent WVS SPE LLC (WVS), sued Azinian and Sugarman to recover on the guarantee. The trial court granted summary judgment in favor of WVS. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

## I. *Facts*

The parties do not dispute the basic timeline of events underlying this lawsuit. In February 2013, Ike's Sandwich Place of Westwood, Inc. (tenant) entered into a commercial lease with WVS. Azinian and Sugarman signed a lease guarantee.

In 2014, WVS filed an action in unlawful detainer against tenant and obtained a default judgment. Rather than execute on the judgment, WVS agreed to reinstate the lease, with certain amendments.

In 2018, tenant again defaulted on its lease obligations. WVS filed another unlawful detainer in March 2019, obtained a judgment in July 2019, and regained possession of the premises in October 2019.

## II. *Procedural History*

## A. *Initial Filings*

In September 2019, WVS filed a complaint containing a single cause of action for breach of guarantee against Azinian and Sugarman. Sugarman filed his answer in November 2019; Azinian filed his answer in January 2020. Trial was initially set for August 10, 2021; though trial was subsequently

continued, the trial court ordered that discovery deadlines would be calculated based on the initial date.

B.    *Motion for Summary Judgment*

WVS filed a motion for summary judgment in July 2022. The motion asserted seven material facts: (1) WVS had a 10-year lease with tenant, running from August 2013 through July 2023, (2) Azinian and Sugarman guaranteed the lease, (3) tenant previously defaulted, but the lease was reinstated with amendments in June 2014, (4) tenant occupied the premises and paid rent from June 2014 through July 2018, (5) tenant stopped paying rent in August 2018, and closed its doors in September 2018, (6) WVS filed an unlawful detainer action in March 2019 and obtained a judgment for possession in July 2019, and (7) WVS suffered $1,366,819.84 in damages from tenant's breach of the lease.

Approximately three weeks after the motion was filed, Azinian filed an ex parte application to reopen discovery, based on his need for information with which to oppose the summary judgment. The application was denied, without prejudice to any request made in the summary judgment opposition papers pursuant to Code of Civil Procedure section 437c, subdivision (h).[1]

Both Azinian and Sugarman opposed the motion for summary judgment. Both filed evidentiary objections. Azinian's separate statement disputed that the lease reinstatement documents had been properly executed. Sugarman filed two separate statements, one which effectively conceded the

---

[1]    All future statutory references are to the Code of Civil Procedure, unless otherwise stated.

3

facts asserted by WVS,[2] and one which added facts regarding post-default negotiations between Sugarman and WVS. Following the procedure suggested by the trial court's ruling on the ex parte application, both Azinian and Sugarman also sought a continuance of the summary judgment hearing pursuant to section 437c, subdivision (h).

WVS filed a consolidated reply and evidentiary objections of its own. The matter was argued and submitted; after supplemental briefing on the calculation of damages, the court issued its final ruling on October 20, 2022.

### C.    *Trial Court's Ruling*

The court overruled all evidentiary objections. It found that Azinian and Sugarman had guaranteed the lease, and had failed to pay the money owed under the guarantee. Under section 437c, subdivision (p)(1), the burden then shifted to Azinian and Sugarman to show a triable issue of material fact.

The trial court rejected WVS's argument that the guarantee had pre-emptively waived all affirmative defenses. However, the court also rejected most of the defenses proffered. As to an alleged failure to mitigate damages, the court found that Azinian and Sugarman had not produced any evidence and therefore failed to meet their burden. The court found that Azinian's challenge to the validity of certain lease documents was both a "red herring" and unsupported by competent evidence. Further, the court rejected the defenses of equitable estoppel and unclean hands, accepting only two narrower challenges to individual categories of WVS's claimed damages.

---

[2]    Sugarman disputed WVS's fact three (the first default, in 2014), but his cited evidence related only to the default in 2018; he also disputed WVS's fact seven, but cited no evidence. He failed to respond to fact four.

Finally, the trial court denied both continuance requests under section 437c, subdivision (h).  It found that Azinian and Sugarman had failed to specifically identify any potential evidence that would change the outcome.  And it held that Azinian and Sugarman had not been diligent in seeking discovery.

On November 22, 2022, the trial court entered judgment in favor of WVS, awarding $1,236,409 in damages.  Azinian and Sugarman timely appealed.[3]

## DISCUSSION

Azinian challenges three aspects of the trial court's ruling: he argues that the guarantee was exonerated when WVS obtained the unlawful detainer judgment in 2014, he contends that the trial court should have sustained his objections to WVS's evidence, and he claims that the trial court should have continued the summary judgment hearing under section 437c, subdivision (h).  Sugarman joins the latter two arguments and adds that the trial court improperly rejected the defenses of failure to mitigate, equitable estoppel, and unclean hands.  We discuss each argument in turn.

### I.    *Azinian*

"The standard of review for an order granting a motion for summary judgment is de novo."  (*Ryan v. Real Estate of Pacific, Inc.* (2019) 32 Cal.App.5th 637, 642.)  "'[W]e review the trial court's rulings and not its reasoning.'"  (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336, quoting *People v. Mason* (1991) 52 Cal.3d 909,

---

[3]    WVS cross-appealed the reduction in damages but abandoned that cross-appeal on August 16, 2023.

944.) However, the trial court's evidentiary rulings, as well as its ruling on a request for a continuance pursuant to section 437c, subdivision (h), are reviewed for abuse of discretion. (*Beebe v. Wonderful Pistachios & Almonds LLC* (2023) 92 Cal.App.5th 351, 378; *Braganza v. Albertson's, LLC* (2021) 67 Cal.App.5th 144, 152 (*Braganza*).)

A.    *Exoneration*

Azinian first argues that his guarantee has been exonerated. He claims the unlawful detainer judgment obtained by WVS in April 2014 created a forfeiture of the lease.[4] Therefore, Azinian's obligations under the guarantee were terminated as of that date, only to be revived with his consent. No such consent was ever given, and therefore Azinian's obligations were never revived. We disagree.

Civil Code section 2819 provides in relevant part that a guarantee "is exonerated . . . if by any act of the creditor, without the consent of the [guarantor] the original obligation of the principal is altered in any respect." However, the guarantee itself may pre-emptively waive that defense. (Civ. Code, § 2856, subd. (a)(1); *G&W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 581–582 (*Dabney*).) The continuing guarantee signed by Azinian and Sugarman in 2013 contained such a waiver.

The guarantee states in section 6 that Azinian "expressly waives . . . any and all rights and defenses . . . under the benefits of the provisions of Sections . . . 2787 to 2855 (inclusive) . . . of the California Civil Code." That includes Civil Code section 2819 and therefore the exoneration defense. Section 6 also provides that WVS "may, at its election, but without obligation to do so, exercise any right or remedy it may have against [t]enant . . .

---

[4]    The judgment itself is not part of the record here.

6

without affecting or impairing in any way the liability of [Azinian and Sugarman] hereunder, except to the extent the [t]enant['s] [o]bligations have been paid." Further, the guarantee provides in section 3 that it is a "continuing guarant[ee]" which "shall continue in favor of [WVS] notwithstanding any modifications, amendments, alterations, renewals and extensions of the [l]ease . . . and notwithstanding any assignment of the [l]ease." Finally, section 3 authorizes WVS to "renew, compromise, settle, extend, increase, accelerate or otherwise change the time for payment, discharge or performance of the [t]enant['s] [o]bligations," and to "change the terms of the [l]ease."

The clear meaning of these provisions is that Azinian must satisfy the tenant's obligations on the lease, no matter how the lease may be transmuted or when it may be enforced. There is no indication that the default judgment from April 2014 altered that obligation. When the judgment was entered, WVS exercised a remedy against the tenant. When the lease was reinstated, WVS elected to compromise on the performance of the tenant's obligations and change the terms of the lease. The guarantee gave WVS the right to do so.

None of the cases cited by Azinian suggest that the entry of a default judgment against tenant caused Azinian's obligations to lapse, much less that such a lapse would be permanent.[5] In his reply brief, Azinian takes the

---

[5] Azinian cites case law for the proposition that he can exercise any defense the tenant might have had. But he does not identify or develop any such defense, other than a one-sentence assertion that the amended lease was unenforceable because it lacked sufficient signatures. (*Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 701, fn. 15 [failure to develop an argument forfeits that point].) Azinian likewise cites cases for the general proposition that guarantees should be strictly construed. But for the reasons already given, this does not support his argument.

position that because the guarantee did not use the word "forfeiture," it did not waive an exoneration defense based on forfeiture. However, there is no requirement that any specific word be used, so long as the meaning of the contract is clear. (*Dabney, supra,* 11 Cal.App.5th at p. 582 ["such a waiver, to be effective, need not include particular language"].) And in waiving defenses based on Civil Code sections 2787-2855, the guarantee waived the entire defense of exoneration contained in Civil Code section 2819, no matter what the basis.

Azinian's obligations under the guarantee were not exonerated. Because we conclude that the original guarantee continued in effect after the lease was reinstated, we need not address Azinian's reply arguments as to acknowledgement of the reinstatement.

B.    *Evidentiary Objections*

Azinian asserted an affirmative defense of failure to mitigate damages. (*Mayes v. Sturdy Northern Sales, Inc.* (1979) 91 Cal.App.3d 69, 86 (*Mayes*) [failure to mitigate damages is an affirmative defense], disapproved on unrelated grounds by *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 521, fn. 10.) He contends that the trial court improperly overruled his evidentiary objections to testimony which was relevant to that defense—more precisely, testimony regarding WVS's efforts to re-rent the premises. We need not decide the merits of this issue, however, because Azinian has failed to make the required showing of prejudice. (*TriCoast Builders, Inc. v. Fonnegra* (2024) 15 Cal.5th 766, 785–786.)

8

As the trial court pointed out, WVS was the only party that submitted evidence on the failure to mitigate defense, although (as plaintiff) it was not required to do so. Azinian had the burden to produce evidence supporting his defense. (§ 437c, subd. (p)(1).) Because he did not produce any such evidence, he failed to meet that burden. Therefore, he would have been unable to establish his defense even if the trial court had excluded the evidence submitted by WVS.

C.    *Request for Continuance*

Section 437c, subdivision (h) provides: "[i]f it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just. The application to continue the motion to obtain necessary discovery may also be made by ex parte motion at any time on or before the date the opposition response to the motion is due."

"Continuance requests under section 437c, subdivision (h), are to be liberally granted." (*Braganza, supra,* 67 Cal.App.5th at p. 152.) However, such a request must (1) show there is essential information to be obtained, (2) demonstrate a reason to believe that information exists, and (3) give a reason why additional time is needed to obtain it. (*Ibid.*) The third element implicitly requires the party seeking the continuance to make a showing of diligence. (*Id.* at pp. 154–157.)

Azinian's opening brief does not directly explain how he meets the elements required for a continuance request. Instead, it argues generally

9

that he was unable to oppose the motion for summary judgment due to lack of discovery, and therefore was prevented from presenting his case. His reply brief points to the multiple substitutions of counsel that occurred in the trial court and asserts that "his conduct has not been so deficient" that he should suffer entry of judgment against him.

This is not sufficient to show that the trial court abused its discretion. Azinian filed an answer on January 23, 2020. His discovery deadlines were set based on the initial trial date of August 10, 2021. He had a year and a half to conduct discovery. The trial court found that Azinian had failed to meet both the first and third elements of the test set forth above: he did not identify essential information that was missing and did not show a diligent effort to obtain that information. Azinian has not established that those findings were in error.

Azinian relies heavily on *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389. In that case, appellant did not receive hundreds of pages of requested documents until after the deadline to file her opposition had passed; she took witness depositions, but had yet to receive the transcripts. (*Id.* at pp. 393–394, 396.) This occurred in part because appellant delayed collecting discovery until the case had cleared a threshold procedural hurdle, and in part because respondent made certain scheduling requests. (*Id.* at p. 397.) In those circumstances, *Bahl* concluded that the delay could fairly be read as either "sensible case management" or as "mere do-nothingness," and that in such "tie" situations a continuance should be granted. (*Id.* at pp. 398–399.)

That is not what happened here. Azinian was not in the middle of discovery, nor did he merely start the process later than the trial court thought advisable. Discovery was closed, and had been closed for

approximately a year before the motion for summary judgment was filed. The issue is not one of timing. Azinian had a full and fair chance to conduct discovery. The trial court found that he failed to identify facts which would change the outcome and failed to explain why he did not seek discovery when that process was open. Under these circumstances, those findings do not constitute an abuse of discretion.

II. *Sugarman*

In his opening brief,[6] Sugarman presents some arguments overlapping those made by Azinian: that his evidentiary objections should have been sustained[7] and a continuance granted under section 437c, subdivision (h). The prior discussion applies with equal force to both appellants and will not be repeated here. Sugarman also argues the amount of damages presented a triable issue of fact, and the defenses of equitable estoppel and unclean hands apply.[8] We are not persuaded.

A. *Damages*

Sugarman states that a party cannot obtain summary judgment on a breach of contract action if the amount of damages remains disputed. While

---

[6] Sugarman did not file a reply brief.

[7] The brief specifically discusses only the objections to paragraph 22 and exhibit 11 of the declaration of Rima Bronte—WVS's evidence regarding mitigation of damages.

[8] WVS argues that the waiver contained in the guarantee prevents both defendants from offering any affirmative defenses. While the exoneration defense may be pre-emptively waived as already discussed, broader equitable defenses are not so easily set aside. (*California Bank & Trust v. DelPonti* (2014) 232 Cal.App.4th 162, 166–167.)

that may be true, Sugarman does not explain how it applies here. A trial court is obliged to grant summary judgment if the papers show no triable issue of material fact. (§ 437c, subd. (c).) To make that showing, a plaintiff need only present evidence supporting each element of their claim. (§ 437c, subd. (p)(1); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851.)

WVS produced evidence supporting the amount of its damages, in the declaration of Rima Bronte. That evidence is sufficient to meet WVS's burden and is uncontradicted. Sugarman's brief identifies only one dispute over damages: the dispute over the alleged failure to mitigate. However, as already explained, failure to mitigate is an affirmative defense (*Mayes, supra,* 91 Cal.App.3d at p. 86) and Sugarman bears the burden of producing evidence to support it. (§ 437c, subd. (p)(1).) He did not do so. Therefore, there was no dispute of material fact, and the trial court was obliged to grant the motion.

## B.    *Equitable Estoppel*

"'The doctrine of equitable estoppel is founded on notions of equity and fair dealing and provides that a person may not deny the existence of a state of facts if that person has intentionally led others to believe a particular circumstance to be true and to rely upon such belief to their detriment . . . . "'Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."'" (*Krolikowski v. San Diego City Employees' Retirement System* (2018) 24 Cal.App.5th 537, 564–565,

quoting *City of Oakland v. Oakland Police & Fire Retirement System* (2014) 224 Cal.App.4th 210, 239–240.)

Sugarman argues that WVS misled him into thinking that he and his new business partner could get a new lease for the same space. While his appellate brief contains no citations to the record in support of this argument, Sugarman's brief in the trial court refers to his own declaration. That declaration shows Sugarman attempting to settle the dispute between WVS and tenant, but it does not demonstrate that any such settlement, or any agreement about a new tenancy, was ever formed.

According to Sugarman's declaration, in July 2019, an agent of WVS offered Sugarman a stipulated judgment with a payment plan for the amount by which tenant was already delinquent, as well as terms for a possible new lease with a new entity. The offer clearly contemplated Sugarman paying the full arrears on the old lease.[9] In August 2019, the same agent asked Sugarman for details regarding the potential new lease. However, that message also contained a statement that WVS "needs to gain possession of the premises" and a statement that a lockout would be completed if the keys were not returned.

This evidence is insufficient to support an equitable estoppel defense. Sugarman does not explain how any of the elements of that defense are met. WVS and Sugarman both had all the material information, and even if Sugarman relied on WVS's offers, that reliance bears no relation to his obligations under the guarantee. WVS made clear that the new lease would not erase Sugarman's obligations under the guarantee, and that it was

---

[9] On the same day the offer was made, the unlawful detainer court entered a judgment for possession of the premises in favor of WVS.

13

planning to regain possession of the premises.  The trial court properly rejected the equitable estoppel defense.

C.    *Unclean Hands*

Sugarman's unclean hands defense is based on the same evidence as his equitable estoppel defense.  And for similar reasons, that evidence is insufficient.  To apply the doctrine of unclean hands, a party must generally show (1) misconduct (2) which is directly related to the transaction at issue and (3) renders an award inequitable.  (*Meridian Financial Services, Inc. v. Phan, supra,* 67 Cal.App.5th at pp. 685–686.)  WVS's communications were clear, and its failure to reach a new agreement with Sugarman is not misconduct.  Nor is that conduct related to the guarantee.  Sugarman's obligations under the guarantee had already been triggered at the time the negotiations occurred.  The trial court properly rejected the unclean hands defense.

**DISPOSITION**

The judgment of the trial court is affirmed.  WVS shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ZUKIN, J.

WE CONCUR:

CURREY, P. J.                          COLLINS, J.

14